## John Balfour, Appellant, *v.* C. T. Russell and George Rindfuss.

*Lease—Oil and gas lease—Reservation in lease.*

An oil and gas lease was for three years or while oil or gas was produced from the demised premises in paying quantities. The lease excepted and reserved " four acres around the buildings upon which no wells are to be drilled without the written consent of both partes." The only producing wells under the lease, were two drilled within the limits of the reservation, which continued to produce oil in paying quantities after the expiration of the three years. The lessor consented in writing to the drilling of one of the producing wells, acquiesced in the drilling of the other, and received his share of the oil in accordance with the provisions of the lease. *Held,* that the lessee was entitled to a continuance of the lease after the expiration of the three years.

Argued Oct. 16, 1894. Appeal, No. 191, Oct. T., 1894, by plaintiff, from judgment of C. P. Butler Co., Sept. T., 1894, No. 27, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for seventy acres of land in Adams township. Before GREER, P. J.

At the trial it appeared that on September 10, 1889, plaintiff, party of the first part, leased to John A. Snee, party of the second part, " for the sole and only purpose of mining and excavating for petroleum, rock or carbon oil, or gas, or other valuable mineral or volatile substances, and for the laying of pipe under said surface for transportation of oil, gas and steam, all that certain tract of land situate in Adams township, Butler county and state of Pennsylvania, and bounded and described as follows, to wit: East by lands of Thomas Anderson ;

north by Beaver and Freeport public road; west by lands of Mrs. Coovert and Marshall; south by lands of Miles Covert; containing seventy acres, more or less, excepting and reserving therefrom 4 acres around the buildings, upon which no wells are to be drilled without the written consent of both parties hereto, the boundaries of which are to be designated and fixed by the party of the first part, second party to pay 3 dollars per acre per annum, payable in advance. Second party agrees not to transfer this lease, nor any part thereof, to either J. P. Fishel, R. W. Miller or Johnston Bros., formerly of the firm of Root & Johnston; first party to receive gas free for household purposes, if taken at the well.

" To have and to hold the said premises for the said purposes only unto the said party of the second part, his executors, administrators or assigns, for, during and until the full term of three years next ensuing the day and year above written, or while oil or gas is produced in paying quantities.

" The said party of the second part hereby covenants, in consideration of the said grant and demise, to deliver unto the said party of the first part, his heirs and assigns, the full equal one-eighth part of the petroleum, rock or carbon oil, or other valuable mineral or volatile substances discovered, excavated, pumped and raised on the premises herein leased, as produced, excavated or pumped in the crude state; the said second party to furnish usual transportation for the same in pipe line or lines."

Snee drilled a well which did not produce oil. He then obtained the written consent of plaintiff to drill a well upon the reservation. This well produced oil in paying quantities. A third well appears also to have been drilled upon the reservation, but without plaintiff's consent in writing. Plaintiff appeared however to have acquiesced in the drilling of the third well, and accepted his share of the oil from it, and from the second well. Snee assigned the lease to defendants.

The court gave binding instructions for defendants. [7]

Plaintiff's points were as follows:

" 1. The continuation of the lease in suit beyond the definite term of three years was contingent upon the finding of oil or gas in paying quantities on the lease proper, and not on the reservation. *Answer:* We qualify this point, and say that as

Mr. Balfour gave a written paper by which he consented that Mr. Snee should drill a well on this reservation, he made this reservation a part of the lease proper, and that we cannot affirm the point in that shape, but it is refused." [1]

" 2. The payment of the rental of three dollars per acre in advance per annum means the payment within the term of the lease fixed by the parties, and a tender of the rental on the 10th day of September, 1892, at which time the term ended, would not have the effect of extending the term beyond the three years. *Answer :* It is true that the tender of the rental and not accepted by Mr. Balfour would not extend the lease. If no oil was produced in wells Nos. 2 and 3, then we would affirm that point, otherwise it is refused." [2]

" 4. By the terms and provisions contained in the lease under which defendants claim, they have no right to drill for oil or gas on the reservation without first having obtained the written consent of plaintiff for each and every well. *Answer :* We affirm that point, that is true, but as he gave his consent in writing, and a well was drilled, and Mr. Balfour received his royalty on all the wells and rentals on the whole seventy acres, we believe he has made it part of the lease, and we affirm that point without other qualification." [3]

" 5. If the jury believed that well No. 3 is within the lines of the reservation and that there was no oil or gas being produced in paying quantities on the land covered by the written lease on the 10th day of September, 1892, the term was at an end, and the verdict should be for the plaintiff. *Answer :* It is admitted that oil was produced at wells Nos. 2 and 3; we refused that point." [4]

" 6. The written covenant in the lease giving the plaintiff the right to designate the boundaries of the reservation was notice to defendants, who are the assignees of the original lessees, and before expending any money in drilling No. 3, it was incumbent on them to call upon the plaintiff to designate the boundaries of the reservation before locating No. 3. *Answer :* That point, we think, is not in this case, and we refuse it." [5]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–5, 7) above instructions, quoting them.

*Lev. McQuistion, J. C. Vanderlin* and *A. B. C. McFarland*
with him, for appellant.

*James Bredin, S. F. Bowser* with him, for appellees.

OPINION BY MR. JUSTICE McCOLLUM, April 8, 1895:

We think this case was correctly decided in the court below.
The plaintiff leased the land in dispute to John A. Snee, for
the purpose of exploring for and obtaining oil or gas. The
lease was for three years or while oil or gas was produced from
the demised premises in paying quantities. The continuance
of the lease beyond three years was contingent upon the pro-
duction of oil or gas in such quantities within that time. Snee
drilled two wells ; one of them was not worth operating and he
abandoned it, the other produced oil in paying quantities. He
then assigned his interest in the lease to the defendants who
drilled two wells, with a like result. All the wells were drilled
within the three years and as two of them were paying wells the
learned court below thought they were sufficient to continue
the lease while oil was obtained from them at a profit. It is
conceded that this is a correct view of the case if the producing
wells are upon the demised premises. The plaintiff however
contends that these wells are on land expressly excepted from
the lease. Is this contention sound and consistent with a fair
construction of that instrument? We think it is not. In the
first place it is not in accord with the construction adopted by
the parties, and under which rent was paid for three years.
The land on which the producing wells were drilled is admit-
tedly a part of the seventy acres described in the lease and on
which the lessors paid rent at the rate of three dollars per acre.
If the parties had understood that the lease included only sixty-
six acres the lessor would not have exacted and the lessees would
not have paid rent on seventy acres. If the language of the
lease fairly raised a doubt respecting the intention of the parties
their interpretation of it during the definite term of three years
would be entitled to great if not controlling influence in the decis-
ion of the question before us. But this is not all that is opposed
to the plaintiff's present contention. He expressly consented
in writing to the drilling of one of the producing wells, acqui-
esced in the drilling of the other and received his share of the

oil in accordance with the provisions of the lease.    During the definite term allowed for the development of the property he permitted the lessees to drill these wells without an intimation of his present claim.    If he then entertained the view of the lease which he now advances in aid of his suit his silence was misleading and the purpose of it fraudulent.    He must have known that the lessees would not have drilled the wells under such an interpretation as he now insists upon, because it renders the time consumed and expenditures incurred in drilling them of no account in determining their rights under the lease. It is an interpretation which makes the time and labor so expended operate as an extinguishment of these rights and a development of the plaintiff's property without compensation to the parties by whom the development was accomplished.    Surely such results cannot be tolerated unless there is a clear warrant in the lease for a construction which produces them.    But there is no such warrant in the lease.    The so-called exception or reservation is nothing more than a restriction upon the lessee's right respecting the location of wells on the seventy acres included in it.    It is a stipulation that the lessor may designate the boundaries of "four acres around the buildings" within which the lessee shall not drill wells without his written consent. When such consent was given, and the work done under it resulted in the establishment of a well which produced oil in paying quantities the effect of it upon the rights of the parties, under the lease, was the same as if it had been drilled outside of the boundaries designated by the lessor.    This is a construction which harmonizes with the understanding of the parties as manifested by their conduct during the definite term, and which, independent of their interpretation of their contract, best accords with the language and object of the instrument which defines their rights.

Judgment affirmed.