### SIMONS et al. v. McDANIEL et al.

No. 19875. Opinion Filed Jan. 19, 1932.

Chas. A. Dickson, for plaintiff in error.

R. J. Roberts, for defendant in error.

Hogan & Gavin, amici curiae.

RILEY, J. On February 20, 1922, Van Meter and wife executed and delivered an oil and gas lease to the 120 acres of land in controversy to Dickinson, and, by mesne assignment, the plaintiff Simons acquired a three-fourths interest and plaintiff Bean Drilling Company acquired a one-fourth interest in the lease.

The lease is dated February 20, 1922. It was executed March 11, 1922. It was recorded May 23, 1922. This lease provided that it shall "remain in full force for a term of five years from this date and as long thereafter as oil, gas or either of them is produced from said land." And also a provision that:

' If no well be commenced on said land on or before the 20th day of February, 1923, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the Maud State Bank at Maud, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $120, which shall operate as a rental

and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payment or tenders, the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending the period as aforesaid."

The rentals were paid in accord with the terms of this lease. Five years from the date of the lease would be February 20, 1927. Five years from date of execution would be March 11, 1927.

Plaintiff made location for a well on said lease January 15, 1927, and the first load of material was placed on the lease January 22, 1927. A rotary rig was completed on the lease February 8, 1927.

The lessor Van Meter died February 25, 1925. On October 25, 1926, his adult heirs executed and delivered an oil and gas lease to this land to defendant McDaniel. It was recorded January 11, 1927. Its effective date was March 27, 1927. Its term was five years.

On November 16, 1926, Ida Van Meter, as guardian of the minor Van Meter heirs, executed a lease to the same property to defendant McDaniel, which lease was recorded January 5, 1927, which lease, by its terms, was to go into effect March 27, 1927.

On February 15, 1927, plaintiffs commenced an action to eliminate the McDaniel leases as a cloud on their title and to quiet title of their lease, and in the meantime to authorize and direct plaintiffs to cease drilling operations on the lease. On February 15, 1927, the court in an ex parte proceeding directed plaintiffs to cease drilling operations pending litigation.

McDaniel answered denying generally. The Van Meters so answered. Thereafter all defendants amended their answer, wherein they alleged that plaintiffs had failed to develop the lease and had done no work to that end since February 1, 1927, and therefore had failed to exercise due diligence and good faith in development of the lease, but had forfeited the same; defendants sought affirmative relief in the cancellation of plaintiffs' lease. Meanwhile the order halting drilling operations aforesaid was outstanding and plaintiffs performed no drilling operations. The cause was heard on December 13, 1927, resulting in judgment entered on April 30, 1928, against plaintiffs and for de-

fendants, quieting their title in fee and leasehold estate and for costs.

Motion for new trial was filed and overruled and plaintiffs below have perfected this appeal and rest the case upon six propositions.

The first contention is that:

"Independent of the order of February 15th, these plaintiffs had a right, on learning of the McDaniel leases, to bring this action to cancel the McDaniel leases to clear their title, and in the meanwhile halt all drilling operations until said cause was finally and definitely determined."

When the McDaniel leases were recorded plaintiffs were in possession of the land in controversy and had commenced drilling operations.

The acts of the Van Meter heirs in executing and delivering "top leases" was an election to declare the first lease at an end. Brooks v. Day Oil Co., 200 Ky. 323, 254 S. W. 912; Thornton, Oil & Gas, vol. 2, sec. 863; Guffey v. Hukill, 34 W. Va. 49, 11 S. E. 754; Wolf v. Guffey (Pa.) 28 Atl. 1117; Chi-Okla. v. Shertzer, 105 Okla. 111, 231 P. 877.

These acts obstructed the exercise of the rights of the original lessees under the terms of their lease. Their title was clouded. Had they produced oil or gas as a result of commenced development, ownership thereof would have been in litigation and the value of production impounded so that a real obstacle was imposed by lessors upon the right of lessee plaintiffs.

It is not necessary that we decide whether, after lessee commenced development of the lease in good faith, the right is a mere option or a vested interest in the leasehold estate, for, considering the rights of lessee plaintiffs as those of an optionee, the rule is that when the party granting an option himself prevents its exercise during the time limited therefor he must give a reasonable time for its exercise after any obstruction which he has interposed has been removed. 13 C. J. 688-689.

This principle of law is founded on common justice and equity.

The drilling clause of lessee plaintiffs' lease conferred upon them the right to commence a well (by complying with the conditions of the instrument, i. e., exercising the option of paying rentals and thus continuing the lease in force) on the very last day of the term specified in the duration clause. Since lessee had such an agreed right, can we with reason say the parties to the lease contract contemplated that right a barren or worthless privilege? To do so is to convict the parties of an absurdity. To the contrary, "in every private grant there passes by implication that which is reasonably necessary to the enjoyment of the thing granted." Himrod v. Ft. Pitt M. & M. Co., 220 Fed. 80 (C. C. A. 8th); Dunlap v. Jackson, 92 Okla. 246, 219 P. 314; 19 C. J. 915. See sections 5058, 5059, C. O. S. 1921, dealing with "reasonable stipulations implied" and "necessary incidents implied."

Therefore we hold that the grant to lessee plaintiffs of the right to commence a well at any time within the term fixed by the lease contract, by necessary legal implication, carried with it the right to complete the well after the period fixed for commencement had expired, subject, however, to abandonment of that right by failure to proceed in good faith and with diligence.

Lester v. Mid-South Oil Co., 296 Fed. 661 (C. C. A. 6th), so holds:

"An oil and gas lease for five years providing in the development clause that the lease should terminate 'if no well be commenced' on or before certain semi-annual dates 'unless' rentals were paid, held, not to expire, where a well was commenced on the last day of the term of the lease, and was thereafter pushed to completion and production; the lease being ambiguous as regarded termination, thus requiring the development clause to be harmonized with the term clause."

The Lester Case was cited and quoted with approval by this court in Dow v. Worley, 126 Okla. 175, 256 P. 56, and it was there held:

"* * * That the defendants, having commenced a well upon the 40-acre tract within the period for which the rentals had been paid, were entitled to complete the same with reasonable diligence, and, when upon completion, production was found in paying quantities, the said oil and gas mining lease would continue for as long as oil or gas is produced."

This result is not an equitable extension of the terms of a lease. Curtis v. Harris, 76 Okla. 226, 184 P. 574.

(Compare Oldfield v. Gypsy Oil & Gas Co., 123 Okla. 293, 253 P. 298.)

But it is a determination, in view of the conflicting clauses contained in the lease, of the term, as intended by the parties.

Of interest in this connection are the cases dealing with discovery of oil or gas during

the term of the lease in an upper sand and where though discovered they are not produced immediately, but lessee drills deeper seeking production from a lower sand, and wherein it has been held that after the fixed term of the lease has expired the lessee discovered oil or gas in the deeper sand by production from the deeper sand, the lease is continued in force. Roach v. Junction Oil & G. Co., 72 Okla. 217, 179 P. 934; Parks v. Sinai O. & G. Co., 83 Okla. 295, 201 P. 517.

These cases are kindred to our present holding that, regardless of nonproduction during the duration clause of a lease, but where a well has been commenced under a drilling clause, the lease by its terms is continued in force pending completion in good faith of the well and thereafter so long as oil or gas is produced in paying quantities.

Frequently this court has construed oil and gas mining leases strictissimi juris as against the lessee and liberally in favor of lessor. But this has always been to the end of promoting development as contemplated by the parties. New State Oil & Gas Co. v. Dunn, 75 Okla. 142, 182 P. 514; Carder v. Blackwell O. & G. Co., 83 Okla. 243, 201 P. 252; Mistletoe O. & G. Co. v. Revelle, 117 Okla. 144, 245 P. 620.

Herein the lessee has, by his actions, evidenced a desire to develop, and no court has been more favorable to the interests of a lessee who seeks to perform his convenants. Strange v. Hicks, 78 Okla. 1, 188 P. 347.

Our conclusion is favorable to development, for it permits completion of a well rightfully commenced. Under the rule stated in Smith v. Gypsy Oil Co., 130 Okla. 135, 265 P. 647, as applied to the facts in this case, a well was commenced in good faith.

In McAlister v. Texas Co. (Tex. Civ. App.) 233 S. W. 859, that court held that by lessors declaring a forfeiture of a lease and denying lessee any further right in the leased premises, "They thus put themselves in default, and were thereafter in no position to complain of the failure of the lessee to drill upon their respective tracts," and quoting from Consumer's Gas Trust Co. v. Worth, 163 Ind. 141, 71 N. E. 489, said:

"As to whether appellant should have commenced operations between March 3, 1902, and the day on which this action was commenced, is, under the circumstances, not a question in the case, for certainly appellee, after notifying appellant company that the contract was at an end, was not in a position to insist or expect appellant to expend money in drilling wells and developing the lands under a contract which she had declared to be forfeited."

See, also, Weaver M. Co. v. Guthrie, 189 Mo. App. 108, 175 S. W. 118; Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749.

In Texas Pac. Coal & Oil Co. v. Patton (Tex. Com. App.) 238 S. W. 202, the lessor refused rentals, denied production existed, and contended the lease had expired by its terms pending litigation begun by lessor. The court held:

"We construe the lease to grant to lessee an option at any time within five years from its date to enter upon the lands demised and drill for oil and gas. It has been held that in options time is of the essence of the contract, but it has also been held that, when the party granting an option himself prevents its exercise during the time limited therefor, he must give a reasonable time for its exercise after any obstruction which he has interposed has been removed. 13 C. J. pp. 688-690."

That court held that lessee would have 60 days' time after termination of the litigation for commencement of operations, which were discontinued by reason of lessor's action.

So holds the Court of Louisiana, Leonard v. Busch-Everett Co., supra, where lessor "repudiated said agreement as naked facts, creating no legal obligation whatever on either party," saying:

"Where the plaintiff notified the defendant that he would not accept any more quarterly payments, and he had elected to terminate the lease agreements, he put himself in default, and was thereafter in no position to put defendant in default."

In Keen v. Logan, 147 La. 80, 84 So. 501, it was held:

"* * * A party who is bound by contract to perform an obligation for the benefit of another party is not in default for nonperformance of the obligation so long as the other party refuses to permit a performance of the obligation."

And that in a case where the action was brought by the owners of the first lease, which is the exact situation in the case at bar.

Observe Gulf Ref. Co. v. Hayne (La.) 86 So. 891, wherein a lessee who was delayed beyond the terms of a lease by lessor recovered for oil produced by lessor, and in Lieber v. Ouachita Nat. Gas & Oil Co. (La.) 95 So. 538, where lessor repudiated the lease contract by refusing to accept rental, the court held:

"Under such circumstances, with a prospective suit to annul that instrument hanging over defendant, plaintiff could not expect the former to make further expenditures to develop either tract, until, at least, a settlement of their differences could be effected."

The Indiana court holds, in LaFayette Gas Co. v. Kelsey, 74 N. E. 7, that:

"After notifying lessee that the contract was at an end, the lessor could not insist that the lessee expend money in drilling wells and developing the lands under a contract which he had declared to be forfeited."

In the West Virginia case of Eastern Oil Co. v. Coulehan, 64 S. E. 836, 65 W. Va. 531, it was observed:

"That in contracts of this kind time is of the essence thereof, and this proposition, for which authorities are cited by counsel, is not controverted; but the case we have in hand is one where the plaintiff was legally entitled to the full term of five years given for exploration, without let or hindrance of the lessor. Indeed, the lessee by the implied covenants of his deed was entitled to the protection of the lessor therein." Johnson v. Armstrong (W. Va.) 94 S. E. 753.

In Stahl v. Van Vleck (Ohio) 41 N. E. 35, and Ross v. Sheldon (Ky.) 119 S. W. 225, it was held in effect as stated in the last-cited cause:

"We do not think that the lessees should be held accountable for failing or refusing to do anything under the contract after the lessor had brought this suit to have it canceled."

So holds Missouri in Weaver Mining Co. v. Guthrie, supra. And in Blodgett v. Lanyon Zinc Co., 120 Fed. 893 (C. C. A. 8th), it was held:

"The grantor of an option who prevents its exercise within the time specified in his grant may not take advantage of the failure of its timely exercise, but must give a reasonable time therefor after the obstruction he interposed is removed."

See, also, Doddridge Co. Oil & Gas Co. v. Smith, 154 Fed. 970; Goodwin v. Standard Oil Co., 290 Fed. 92; Hamilton v. Empire Gas & Fuel Co., 297 Fed. 422.

Our views expressed render it unnecessary to consider other assignments of error. Judgment of the trial court is reversed, and the cause is remanded, with directions to render judgment in conformity herewith, canceling the top leases of McDaniel and quieting title in plaintiffs.

This is the rule in two federal district courts of this state.

LESTER, C. J., and CULLISON, ANDREWS, and KORNEGAY, JJ., concur. CLARK, V. C. J., and HEFNER, SWINDALL, and McNEILL, JJ., dissent.

---

McNEILL, J. (dissenting). I dissent. This is an appeal from the judgment of the district court of Seminole county, Okla., in an action instituted by George A. Simons and the Howard Bean Drilling Corporation against George M. McDaniel, Ida Van Meter, wife of John W. Van Meter, deceased, and the adult and minor heirs of said deceased, to cancel certain oil and gas mining leases executed by said Ida Van Meter and said heirs to said George M. McDaniel, which leases were filed of record prior to the expiration of the fixed term of five years of a former lease, covering the same premises, made on February 22, 1922, by said John W. Van Meter, and his said wife, Ida Van Meter, to O. L. Dickerson. On December 17, 1926, the plaintiff, George A. Simons, purchased an undivided three-fourths interest in and to the lease of the original lessors, which was subsequent to the purchase of aforesaid lease by McDaniel, and, at the time of the recording of aforesaid top leases to said George M. McDaniel, said plaintiffs were the joint owners of said oil and gas mining lease executed by the original lessors to said Dickerson.

The parties will be referred to as they appeared in the trial court, plaintiffs in error as plaintiffs, and defendants in error as defendants. The lease of plaintiffs contained the following provision:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

It also contained the following provision:

"If no well be commenced on said land on or before the 20th day of February, 1923, this lease shall terminate as to both parties, unless the lessee, on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Maud State Bank at Maud, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $120, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payment or tenders, the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said

first rental is payable as aforesaid, but also the lessee's option of extending the period as aforesaid, and any and all other rights conferred."

The rentals were paid in accordance with the terms of said lease. On January 15, 1927, plaintiffs ordered a turnbuckle rotary rig to be placed on said lease; on January 16, 1927, plaintiffs made a location for a well, and the first load of material was placed on the lease on January 22, 1927. A cement cellar was dug and an engineer's house erected. On February 8, 1927, a rotary rig was completed. However, no engine, boiler, or tools were moved on said premises, and consequently actual drilling was not commenced. Plaintiffs made no effort toward commencing any developments until January 15, 1927, being ten days after the recording of the first top lease on, to wit, January 5, 1927. On February 15, 1927, being five days before the exploratory or definite term of plaintiffs' lease was to expire, plaintiffs commenced this action in said district court against George M. McDaniel and the then record owners of the land to cancel said leases executed to said McDaniel and to quiet the title of the plaintiffs under said lease. Plaintiffs also prayed in their petition that the court grant an injunction against themselves to halt an extension of drilling operations on the property in controversy until said cause was finally heard and determined, and on the date of filing the said petition, said plaintiffs obtained an ex parte order from said court against themselves directing the suspension of all drilling under their lease until the final determination of said cause.

The defendants answered by way of general denial, and also alleged in their answer that, after the construction of said rig and the placing of equipment on the lease for the drilling of a well, plaintiffs took no further steps to drill a well or to proceed with development of said lease in good faith, and further allegations to the effect that oil and gas mining developments were proceeding in the general vicinity in which the land in question was located, but that the defendants, after the expiration of the definite term, had elected to treat the lease of plaintiffs as abandoned, and prayed for the cancellation of plaintiffs' lease and the removal of the same as a cloud upon their title.

The record shows that the lessor, John W. Van Meter, died on February 25, 1925. On October 25, 1926, his adult heirs executed and delivered an oil and gas mining lease to defendant George M. McDaniel. This lease was for a term of five years, beginning March 27, 1927, and was recorded January 11, 1927; on November 16, 1926, the guardian of the minor heirs of said John W. Van Meter, deceased, also executed a lease to said defendant George M. McDaniel, which lease was likewise for the term of five years, beginning March 27, 1927, and was recorded January 5, 1927.

The trial court found the issues in favor of the defendants and quieted the title of the defendants to the fee and their leasehold estate, and from this judgment the plaintiffs have appealed to this court.

It is the contention of the plaintiffs that under the terms of their lease the commencement of a well before the expiration date thereof would extend the definite term of five years designated in said lease, provided the same was prosecuted in good faith and with due diligence.

The plaintiffs also contend that:

"Independent of the order of February 15th, these plaintiffs had a right, on learning of the McDaniel leases, to bring this action to cancel the McDaniel leases to clear their title, and in the meantime halt all drilling operations until said cause was finally and definitely determined."

However, as to this latter contention, the same is without merit under the pleadings unless the term of the lease was extended by the commencement of the drilling of a well, even though the execution of the leases by the heirs of John W. Van Meter, deceased, was an election to declare plaintiffs' lease at an end, inasmuch as there is no contention made that defendants in any way attempted to secure possession of said premises, or that their acts constituted an interference which prevented, or even was intended to obstruct, the drilling of a well within the definite and fixed term of said lease. On the other hand, the defendants contend that the lease executed to said Dickerson expired under its own terms when neither oil nor gas was found on said premises within the definite term fixed by said lease; that the plaintiffs were not entitled under the terms of said lease to a longer period of possession of the premises for the purpose of exploring the same for oil and gas than that fixed by the terms clause thereof, which ended February 20, 1927, the lease being dated February 20, 1922, and which specifically provided as follows:

"It is agreed that this lease shall remain in force for a period of five years from this date and as long thereafter as oil or gas

or either of them is produced upon said land by lessees."

Defendants also contend there is nothing in the contract provisions of the subsequent, drilling, or defeasance clauses wherein the fifth year is different in any respect from any of the other years; that there is no extension provided for in the lease in express language to enlarge or make it extend for more than five years from the date of the execution until its termination unless a paying oil or gas well was obtained before the expiration of this definite five-year period fixed in said lease.

At the threshold it is to be observed oil and gas leases in this jurisdiction are construed strongly against the lessee and in favor of the lessor. New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514; Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545; Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716; Curtis v. Harris, 76 Okla. 226, 184 P. 574.

Counsel for plaintiffs rely largely upon the federal case of Lester v. Mid-South Oil Co., 296 Fed. 661 (C. C. A. 6th), to uphold their contentions. This case arose in the state of Kentucky. The courts of that state, in an endeavor to primarily favor and foster development of oil and gas mining leases, have for many years followed a different rule of property in reference to the drilling clause of an oil and gas mining lease than that which has been so consistently adhered to by the courts of this state, further reference to which will be hereinafter made, and when viewed in the light of these circumstances the decision of the federal court in that case can have no persuasive or controlling bearing on the instant case.

This court has steadfastly held to the rule that an oil and gas mining lease, having a definite and fixed term limited with a "thereafter" clause "as long as oil or gas or either of them is produced upon said lease by the lessee," terminates not by forfeiture, but by its own terms at the end of the fixed period unless oil or gas is found or produced therefrom in the absence of the lessee having specifically provided against such contingency by an appropriate term in his lease contract.

I quote from the work of Mills-Willingham on the Law of Oil and Gas (1926):

Sec. 43. "The term of practically all oil and gas leases is for a definite time, usually for five or ten years, 'and as long thereafter as oil or gas is produced. * * *' "

Sec. 70. "By the term of the lease is meant that period of time during which the lessee is entitled to the occupancy of the leased premises for the purpose of exploration and production. At the beginning of the petroleum era, the lands leased were usually of small area, situated close to production, and intended for immediate development. As a consequence, these early leases were almost invariably for a fixed term of ten or twenty years, with a provision requiring the drilling of the initial well within a few months, in default of which the lease was to be forfeited.

"The term of the modern lease is a modification of the first form, which has developed as the result of the conflicting interests of the lessee, who naturally desires to hold the land for the longest possible term with the least possible development; and of the lessor whose interest leads him to desire a short term and prompt drilling of the initial well. The productive life of the early fields was longer than had been anticipated, and as a result, many leases terminated by the expiration of the fixed term before the exhaustion of the productivity of the land. As a consequence of this experience, the producer thereafter insisted upon inserting in the new lease form after the fixed term, a clause to this effect: 'and as long thereafter as oil or gas is produced in paying quantities'.

"In the meantime, the expansion of the business had given rise to the practice of acquiring leases in advance of production. This necessitated a modification of the drilling clause so as to permit the deferring of the drilling of the initial well, upon the payment of an annual sum, called the rental. As a result of these changes, the lessee acquired the right to hold the lands of the lessor, during the fixed term of 15 or 20 years, without drilling, upon the payment of a rental, and as long thereafter as oil or gas was produced. But the courts proved very hostile to this form of lease, by which the land of the lessor might be held indefinitely by the payment of rental, and adopted the rule that the lessor might refuse the rental and demand the drilling of a well within a reasonable time. This is still the law in Indiana and Kentucky, notwithstanding the change by which the fixed term has been greatly reduced.

"This attitude of the courts led to the shortening of the exploratory period during which drilling could be deferred by the payment of rental, and brought the modern form which was very much in use by the beginning of the century and is now almost universally adopted. In the modern form of lease, the land is leased for a fixed term of five years (sometimes ten) and as long thereafter as oil or gas is produced. The lessee has the privilege of deferring the drilling of the initial well, by the payment of rentals, during the fixed term but no longer.

"It will thus be seen that the term of the lease has from the very beginning been determined by two separate provisions or clauses; the granting or habendum clause, which defines the term proper, and the drilling clause which is a covenant in the nature of a forfeiture or condition subsequent, which qualifies the fixed term. * * *"

Sec. 71. "When the fixed term for which the land is leased expires, where there is no provision for its extension by production, or oil or gas is not found within the fixed term, under the extension clause the lease itself terminates and ends; not by virtue of a forfeiture, as for a violation of the drilling clause, but by the expiration of the term for which the leasehold estate was created.

"The payment of rental is in lieu of drilling under the drilling clause and has no effect upon the fixed term itself. Therefore, the tender of rentals, either before or after the expiration of the term, will not extend it beyond the term * * *"

—citing the following authorities: (2) See very interesting article by Mr. Veasy on the evolution of the habendum clause in the Michigan Law Review, vol. 19, No. 2. (3) Cassell v. Crothers, 193 Pa. 359, 44 Atl. 446, 20 M. R. 160; Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; Collins v. Mt. Pleasant Oil & Gas Co., 85 Kan. 483, 118 P. 54, 38 L. R. A. (N. S.) 134; Ash Grove Lime, etc., Co. v. Chanute Brick & Tile Co. (Kan.) 116 Pac. 1087 Northwestern Ohio Nat. Gas Co. v. Tiffin, 59 Ohio St. 420, 54 N. E. 77; Chaney v. Ohio Oil Co., 32 Ind. App. 193, 69 N. E. 477; Indiana Nat. Gas & Oil Co. v. Beales (Ind. App.) 74 N. E. 551; Perkins v. Sanders, 109 Kan. 372, 19A8 P. 954; Baldwin v. Blue Stem Oil Co., 106 Kan. 848, 189 P. 920; Humphreys v. Fletcher, 27 N. Mex. 639, 204 P. 70; Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; Young v. Forest Oil Co., 194 Pa. 243, 45 Atl. 121, Western Penn. Gas. Co. v. George, 161 Pa. 47, 28 Atl. 1004, 34 W. N. C. 332, 20 M. R. 345; Enfield v. Woods, 198 Ky. 328, 248 S. W. 842, 4 O. & G. 698; Union Gas & Oil Co. v. Adkins, 278 Fed. (C. C. A.) 854; Roach v. Junction Oil Co., 72 Okla. 213, 179 P. 934; Hennessey v. Junction Oil & Gas Co., 75 Okla. 220, 182 P. 666; Anthis v. Sullivan Oil & Gas Co., 83 Okla. 86, 203 P. 187, 3 O. & G. 83; Guffey v. Smith, 237 U. S. 101, 59 L. Ed. 856, 35 S. Ct. 526, rev.'g 202 Fed. 106, 120 C. C. A. 436; Murdock-West Co. v. Logan, 69 Ohio St. 514, 69 N. E. 984.

Sec. 72. " * * * The finding or producing of oil or gas, during the fixed term, in accordance with the provisions of the lease, is a condition precedent to the right to hold or produce from the land after the expiration of the fixed term, however, extends the lease after the expiration of the fixed term as long as that condition shall continue * * *"

—citing the following authorities: Young v. Forest Oil Co., 194 Pa. 243, 45 Atl. 121, 30 Pittsbl. L. J. (N. S.) 221, 20 M. R. 345; Summerville v. Apollo Gas Co., 207 Pa. 334, 56 Atl. 876; Barbour-Steadman & Co. v. Tompkins, 81 W. Va. 116, 93 S. E. 1038, L. R. A. 1918B, 365; Ohio Fuel Oil Co. v. Greenleaf, 84 W. Va. 67, 99 S. E. 274; Gillespie v. Ohio Oil Co., 260 Ill. 169, 102 N. E. 1043; South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; Eastern Oil Co. v. Coulehan, 65 W. Va. 531, 64 S. E. 836; Texas-Pacific Coal & Oil Co. v. Bratton (Tex. Civ. App.) 239 S. W. 688, 3 O. & G. 29, 285; Texas-Pacific Coal & Oil Co. v. Bruce (Tex. Civ. App.) 233 S. W. 535, 2 O. & G. 624; Enfield v. Woods, 198 Ky. 328, 248 S. W. 842, 4 O. & G. 698; Parks v. Sinai Oil Co., 83 Okla. 295, 201 P. 577, 5 O. & G. 52; Roach v. Junction Oil & Gas Co., 72 Okla. 213, 179 P. 934; Pierce Oil Corp. v. Schacht, 75 Okla. 101, 181 P. 731; Hennessey v. Junction Oil & Gas Co., 75 Okla. 220, 182 P. 666; Bruner v. Hicks, 230 Ill. 536, 82 N. E. 888, 120 Am. St. Rep. 332; Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; Johnson v. Armstrong, 81 W. Va. 399, 94 S. E. 753.

Sec. 107. " * * * In Indiana and Kentucky there has been established a doctrine that is not only at variance with all other jurisdictions, but apparently with all rules of construction of contracts generally. In these states it is held that, notwithstanding the stipulations of the lease for delay in drilling, the lessor may refuse the rental, demand the drilling of a well and, upon the failure of the lessee to comply within a reasonable time, cancel the lease." Mills-Willingham, Law of Oil and Gas (Edited 1926).

In the case of Roach v. Junction Oil & Gas Co., 72 Okla. 213, 179 P. 934, this court, in an opinion by Mr. Justice Hardy, April 1, 1919, in syllabus par. 1 said:

"Where an oil and gas lease contains a provision that it shall be operative for the period of five years from date, or so long as gas, oil, or other minerals are found thereon in paying quantities, in, under, and upon said land, it is a condition precedent to the extension of lessee's right to continue operations beyond the five years that oil and gas or either of them should be found upon

the premises in paying quantities within five years from the date of the lease."

In support of this proposition, in the body of the opinion the court cites the following cases: Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716; Wellsville Oil Co. v. Miller, 44 Okla. 493, 145 P. 344; Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; Murdock-West Co. v. Logan (Ohio) 69 N. E. 984; Huggins v. Dailey, 90 Fed. 606; Steel Smith v. Gartlan (W. Va.) 29 S. E. 987; and also cites the case of Eastern Oil Co. v. Coulehan (W. Va.) 64 S. E. 836, syllabus par. 2 being as follows:

"After gas was found upon the leased premises within five years from the date thereof in paying quantities, the lessee thereby became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease."

The Roach Case was approved by this court in the case of Parks v. Sinai Oil & Gas Co., in an opinion by Mr. Justice Nicholson, 83 Okla. 295, 201 P. 517, on July 5, 1921 and in which a rehearing was denied November 8, 1921. The court in the opinion states as follows:

"If gas was produced in paying quantities within one year from the date of the lease, the defendant became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease, and such right, once vested by the discovery of gas in the upper sand, was not lost by the lessee continuing to drill deeper in search of oil or gas in a lower sand, although he did not find oil or gas in the lower sand within the limitations described by the lease." Roach v. Junction Oil & Gas Co., 72 Okla. 213, 179 P. 934; Eastern Oil Co. v. Coulehan (W. Va.) 64 S. E. 836."

In the case of Murphy v. Garfield Oil Co., 98 Okla. 273, 225 P. 676, it is said:

"Where an oil and gas lease is made for a term of five years, or as long thereafter as oil or gas is found in paying quantities, the five years is the initiative period and is for the purpose of testing and exploring the premises for oil and gas."

The syllabus set forth in the Roach Case, supra, may well be said to be a rule of property in this state.

In the case of Baldwin v. Blue Stem Oil Co., 106 Kan. 848, 189 P. 920, the court said:

"A gas and oil lease which provides that it shall remain in force for three years from its date, and as long thereafter as gas or oil is produced from the land by the lessee, and which provides that the lease shall terminate if no well is completed on the land before one year from the date thereof, unless a year's rent is paid, which payment shall defer the completion of a well for 12 months, and which provides that upon like payment the completion of a well shall be deferred for like periods, terminates at the end of three years, and is not extended beyond that period by failure to drill a well on account of water failure, muddy roads, storms, sickness of employees, or inability to get casing as a result of the action of the government."

In the case of Perkins v. Sanders, 109 Kan. 372, 198 P. 954, the Supreme Court of Kansas said:

"Two questions are presented, which the defendants state as follows:

"'First. Did the lease by its own terms expire on the 20th day of October, 1920, unless oil or gas in paying quantities had been found upon said land?

"'Second. If the lease did expire, were appellees estopped to secure a declaration of its termination and to evict appellants? * * *'

"The first question is answered by the lease itself, which was executed on October 20, 1917:

"'It is agreed that this lease shall remain in force for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by lessee.'

"The instrument further provided that, if no well were commenced on or before October 20, 1918, the lease terminated unless a stipulated sum of money were paid. Commencement of a well might be deferred for additional periods by making similar payments. If the first drilling resulted in a dry hole, the lease terminated, unless within 12 months from the last rental period payments were resumed. To secure development within a year, the lessors offered a bonus. No provision of the lease extended the term beyond three years, in the absence of production by the lessees within that period, and the first drilling was done on the last day of the term."

The lease construed in that case contained provisions almost identical to those in the instant case.

In the case of Humphrey v. Fletcher, 27 N. M. 639, 204 P. 70, the Supreme Court of New Mexico said:

"The term of an oil and gas lease, definitely fixed, is not extended by payment of rental which, under the provisions of the lease, may be paid in lieu of drilling. * * *

"But the lease did not provide that the two-year term should be extended by the payment of the rent. The only possibility

of the extension of that period under the lease was by the production of oil or gas."

See, also, Woodsworth v. Franklin, 85 Okla. 27, 204 P. 452, wherein leases with identical provisions to the lease in question were under consideration by the court. In that case it was insisted on the part of Mr. Franklin, by reason of the statute of frauds concerning an executory contract of sale of said lease, as stated in the opinion, as follows:

"* * * That the term of each of said leases is conditioned upon the subsequent provision quoted above, providing for the payment of a stipulated amount as rental and to cover the privilege of deferring the commencement of a well for an additional 12 months and that, as the lessee was not bound to pay said rental, and upon his failure to do so, the leases automatically terminated; that therefore the conditions of the leases were such that the terms thereof were not fixed for a definite period beyond one year. In other words, that the leases were in reality for a period of one year, with the option on the part of the lessee to renew them from year to year upon payment of rental. And it is further contended that said leases do not create an interest in the lands, and for this reason are not within the statute of frauds. * * *

"By the provisions of the leases above set out, it is specifically provided that:

" 'This lease shall remain in force for a term of five years from this date, and as long thereafter as oil and gas or either of them is produced from said land by the lessee.'

"We are unable to see how these leases which specifically provide that they shall remain in force for a term of five years from their date, and as much longer as oil or gas is produced, can be otherwise construed than meaning just what they say. It is true that if the lessee should fail to commence a well or pay the stipulated rental within one year from the date of the leases, such leases would terminate as to both parties, but if a well was commenced, no rental was required to be paid, and if the rental was paid the lessee was not required to commence a well. As we view the leases, the proper construction to be placed thereon is that the lessee had the option of terminating them by failure to either commence a well or pay rental with the 12 months specified, but the lessor had no option to terminate the same, and they would remain in force for the full term of five years upon compliance with their terms by the lessee. This option upon the part of the lessee to terminate the lease did not convert the five-year term into a term for but one year. * * * We conclude that the leases under consideration, being for a term

of five years, are under the provisions of section 941, Rev. Laws 1910, required to be in writing."

The Court of Civil Appeals of Texas, Galveston, in the case of Leon v. Gulf Production Co., 35 S. W. (2d) 1101, in considering an oil lease for a ten-year period and as much longer as oil should be produced, or until lessee should be satisfied that oil could not be produced, held that the same terminated after ten years, where no oil had been found. In the body of the opinion the court said:

"The clause 'or until lessee is satisfied that oil, gas, sulphur or other minerals in paying quantities cannot be produced from said premises', appearing in the lease contract, creates no ambiguity therein. It is clearly apparent from the instrument as a whole that in making the lease contract the parties intended that, by the clause quoted, the lessee, petroleum company, was reserving the right to terminate the lease at its option by giving written notice to the lessors, at any time, of its intention to abandon the lease to the end that it might be relieved of the further payment of the $100 provided for in the contract. The construction of appellant placed on the clause quoted, if adopted, would ignore the definite and clear provision in the contract that the lessee should have and hold the leased premises for a term or period of ten years from the date thereof and as much longer thereafter as oil, gas, sulphur, or other minerals are produced in paying quantities, would read out of the contract the ten year provision.

"It is the duty of the courts in construing a contract, if possible, to give effect to all of its parts and to give to it its true meaning by a consideration of all of its provisions taken as a whole. It was, as we have already said, clearly expressed in the contract that if at any time the lessee should become satisfied that no oil, gas, sulphur, or other minerals in paying quantities could be produced from the leased premises within the ten-year period, it would have the right to abandon the lease and be relieved of any further monthly payments. Such contention is in harmony with the ten-year provision and does not nullify and make the ten-year period provision useless or meaningless.

"To say that the lease shall remain in force for ten years and as much longer as minerals are produced in paying quantities, and in the next breath to say that this lease shall remain in effect after the ten-year period without the production of minerals, until lessee is satisfied, is too contradictory to have ever been the intention of the parties. One destroys the other.

"When the lease says that it shall remain

in force for a period of ten years and as much longer as minerals are produced in paying quantities, the length of the lease is named, and the further expression 'or until lessee is satisfied that oil, gas, sulphur or other minerals in paying quantities cannot be produced from said premises,' was intended to limit the definitely named time. The lease under its express terms expired at the end of the ten-year period, because it is agreed that no minerals were being produced on that date. American Window Glass Co. v. Indiana Natural Gas & Oil Co., 37 Ind. App. 439, 76 N. E. 1006; American Window Glass Co. v. Williams, 30 Ind. App. 685, 66 N. E. 912; Indiana Natural Gas Co. v. Grainger, 33 Ind. App. 559, 70 N. E. 395; Western Pennsylvania Gas Co. v. George, 161 Pa. 47, 28 A. 1004; Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; Bettman v. Harness, 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566; Indiana Natural Gas & Oil Co. v. Beales (Ind. App.) 74 N. E. 551; Ellis v. Cricket Coal Co., 166 Iowa, 656, 148 N. W. 887; Van Liew v. Norwood-White Coal Co., 190 Iowa, 79, 179 N. W. 960."

In the case of Brown v. Fowler, decided in 1902, 65 Ohio St. 507, 63 N. E. 76, which has often been cited with approval by our court, the Supreme Court of Ohio in the third paragraph of the syllabus said:

"Further along in the lease the following appeared: 'In case no well shall be drilled on said premises within twelve months from the date hereof, this lease shall become null and void, unless the lessee shall pay for further delay at the rate of $1 per acre at or before the end of each year thereafter, until a well shall be drilled.' Held, that the payment of $1 per acre could in no event have the effect to extend the lease beyond the two years mentioned in the habendum clause, and, no oil or gas having been found within the two years, the right to drill under the lease ceased at that time."

In the body of the opinion, the court says, in speaking of the habendum clause which was "for the term of two years from the date hereof, and as long thereafter as oil or gas is found in paying quantities thereon not exceeding in the whole the term of 25 years from date hereof," as follows:

"This clause means that the term of the lease is limited to two years, but that if, within the two years, oil or gas shall be found, then the lease shall run as much longer thereafter as oil or gas shall be found in paying quantities; but, if no oil or gas shall be found within the two years, the lease shall at the end of the two years, terminate, not by forfeiture but by expiration of term; and after the expiration of said two years no further drilling can be done under the lease; and, even if oil or gas or both shall be found within the two years, the whole term of the lease must terminate at the end of 25 years from the date of the lease. Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266. So that by the aid given by the habendum clause to the granting clause, the length of the term of the lease is settled and definitely fixed.

"After the length of the term of the lease is thus definitely and certainly settled, comes the condition subsequent or defeasance clause, which says: 'In case no well shall be drilled on said premises within twelve months from the date thereof, this lease shall become null and void, unless the lessee shall pay for the further delay at the rate of $1 per acre at or before the end of each year thereafter until a well shall be drilled.' This clause clearly means that the lease may be made to terminate in less time than two years—that is, at the end of twelve months—by a failure to drill a well on the premises within the twelve months, but that the lessee may prevent such termination of the lease at the end of twelve months by paying for further delay at the rate of $1 per acre at or before the end of each year thereafter until a well shall be drilled; that is, the payment must be made at or before the end of the second year of the lease, and the further delay cannot be beyond the term of two years, fixed as the lifetime of the lease. And the words 'until a well shall be drilled' mean until a well shall be drilled within the two years, the term of the lease. So that this clause cannot have the effect, in any event, to extend the lease beyond the two years definitely and certainly fixed in the habendum clause. If this is not the clear construction of this clause, then its meaning is doubtful and uncertain; and the uncertainty of this clause cannot, in legal effect, have the force to overcome the certainty on the same subject in the habendum clause. Certainty in one part of an instrument will always prevail over uncertainty on the same subject-matter in other parts. True, an instrument must be considered and construed as a whole, taking it by the four corners, as it were, and giving effect to every part; but when one part is certain on a given subject, and all the other parts are uncertain on that subject, the certain will prevail over the uncertain, even though there seems to be a general indefinite intention pervading the whole instrument to some extent inconsistent with such certainty."

I do not find that this case, standing as the law of that state since 1902, has ever been overruled by the Supreme Court of Ohio. It is cited with approval by Court of Appeals in the case of Linn v. Wehrle, 35 Ohio App. 107, 172 N. E. 289, decided Feb. 27, 1928.

In the case of J. J. Fagin and Company v. Burns, 247 Mich. 674, 226 N. W. 653,

where the decisions bearing on the question are collected and discussed, the court of Michigan discusses the case of Lester v. Mid-South Oil Co., 296 Fed. 661, cited by plaintiff, and said:

"No other lease just like this one seems to have been construed by the courts. Upon other forms, Perkins v. Sanders, 109 Kan. 372 (198 P. 954), and Cook v. Gulf Refining Co., 127 La. 592 (53 South. 874), sustain defendant's contention that the term clause dominates the time, and that the expiration date therein stated is not extended by a development clause which permits commencement of a well at any time within the fixed term. On the other hand, a majority of the court, in a case closely in point, Lester v. Mid-South Oil Co., 296 Fed. (C. C. A.) 661, has held to the contrary. The latter case involved a Kentucky lease for five years, which provided for rentals for deferring commencement of operations for successive periods during the term. The court held the term and development clauses inconsistent, and that the latter modified the former, so that a well commenced on the last day of the fixed term could be completed after its expiration. In reaching its conclusion, the court pointed out that the development clause was entitled to 'additional consideration', because it was later in the instrument than the term-clause. This reasoning is in conflict with the decisions of this court, which give pre-eminence to the first of repugnant clauses. Putman v. Railroad Co., 174 Mich. 249; Mullreed v. Thumb, 116 Mich. 440; 35 C. J. p. 1179.

"By the great weight of authority, the term clause, which is the habendum clause, dominates the period for which the lease shall run, so that, unless it is properly modified by other provisions, all rights of the lessee cease at the expiration of the fixed time stated in the term clause, except in the one contingency that at the expiration of such time the lessee is actually producing oil and gas on the premises. A late start or miscalculation of difficulties or time does not excuse failure to produce. If allowance be made for different conceptions of 'production', the rule seems to be sustained by practically unanimous judicial opinion. Summers, Oil and Gas (1927) pp. 292, 294; Mills & Willingham, Law of Oil and Gas (1926) p. 118; Thornton's Law of Oil and Gas, sec. 142; Guffey v. Smith, 237 U. S. 101 (35 Sup. Ct. 526); Union Gas & Oil Co. v. Adkins, 278 Fed. (C. C. A.) 854; Brown v. Fowler, 65 Ohio St. 507 (63 N. E. 76). At the expiration of the fixed time, if there is no production to extend it, the lease ends not by forfeiture but by its own terms. This distinction has sometimes been lost sight of by courts, with the result of unnecessary conflict. The unanimity of opinion upon the effect of the term clause

among courts which are hopelessly divided on nearly all other phases of the oil and gas law is a strong inducement to sustain its dominating character, in the interest of certainty and uniformity of construction and security of rights.

"The question is whether the development clause operates to modify the term clause so as to extend the fixed time without production of oil or gas. The primary purpose of the development clause was to escape the rule that drilling must begin within a reasonable time. There was no necessity for the specific grant to the lessee of the right to begin operations at any time within a year. It had that right by virtue of the original grant. The object was to abrogate the implied duty of development within a reasonable time by an express optional agreement for a definite time. Mills & Willingham, Law of Oil and Gas (1926) p. 153.

"It is not necessary to construe the clause as extending the fixed term in order to effectuate such purpose."

Mr. James A. Veasy, who for a number of years has been general counsel for the Carter Oil Company, one of the outstanding oil companies of the Mid-Continent field, in a very illuminating article on the habendum clause appearing in the Michigan Law Review, vol. 19, No. 2, December, 1920, suffuses his views therein expressed with numerous authorities. In this article he states, in part, as follows:

"For simplicity of statement the original or definite term of the modern lease will be designated here as the 'exploratory period.' Obviously the length of this period will depend upon the peculiar condition of the property at the time the lease is made. If the land is in the neighborhood of production or if other circumstances indicate that the tract is oil-bearing, it is the natural disposition of the lessor to restrict the duration of the exploratory period. Accordingly, we find that in the developed fields the duration of the fixed term ranges from 60 days in extreme cases to two years. This means, of course, that a lease of this character terminates within the short term set forth therein unless the property is made productive within that time. On the other hand, where wildcat territory is involved, the lessee will not agree to a short exploratory period. In such circumstances it is usual to provide for a lease effective for a term of five or ten years and as long thereafter as oil or gas shall be found, the lessee having the right to maintain the lease for the original term by the payment of a periodical rental, and the alternative right to surrender the instrument when the prospective value of the lands covered thereby no longer justifies the payment of the prescribed rental."

In this article he discusses the divestiture of a lessee's title by the expiration of the term provided for in a lease having one of the usual forms of the "thereafter or extension clause," to wit, "as long thereafter as oil or gas is found in paying quantities," "as long thereafter as oil or gas is produced in paying quantities," "as long thereafter as oil or gas is produced," and says:

"When and under what conditions does a lease of this character terminate? As a practical matter the modern habendum clause is important in the following circumstances: First, where the lessee fails to develop the property in any manner during the exploratory period; second, when the well or wells drilled by him during that time are nonproductive; third, when the well or wells drilled during the exploratory period cease to produce before the end of the definite term. Ignoring the possibility of the forfeiture, abandonment, or surrender of the grant within the definite term, the question upon principle is susceptible of but one answer. The plain intent of the clause is that the lease shall terminate absolutely upon the happening of any one of the three contingencies just mentioned. Such, precisely, is the universal holding of the courts."

Here follows a formidable array of authorities, as follows: Conkling v. Krandusky, 112 N. Y. Supp. 13; Eaton v. Allegany Gas Co., 122 N. Y. 416, 25 N. E. 981 (1890); Shellar v. Shivers, 171 Pa. St. 569, 33 Atl. 95 (1895); Riddle v. Mellon, 147 Pa. St. 30, 23 Atl. 241 (1892); Western Pa. Gas Co. v. George, 161 Pa. St. 47, 28 Atl. 1004 (1894); Cassell v. Crothers, 193 Pa. St. 359, 44 Atl. 446 (1899); Glasgow v. Chartiers Oil Co., 152 Pa. St. 48, 25 Atl. 232 (1892); Double v. Union Heat & Light Co., 172 Pa. St. 388, 33 Atl. 694 (1896); Young v. Forest Oil Co., 194 Pa. St. 243, 45 Atl. 121 (1899); Smith v. Hickman, 14 Pa. Super. Ct. Rep. 46 (1900); Balfour v. Russell, 167 Pa. St. 287, 31 Atl. 570 (1895); Summerville v. Apollo Gas Co., 207 Pa. 334, 56 Atl. 876 (1904); Foster v. Elk Fork Oil & Gas Co., 90 Fed. 178 (1898); Barnsdall v. Boley, 119 Fed. 191 (1902); Bettman v. Harness, 42 W. Va. 433, 26 S. E. 271 (1896); McGraw Oil & Gas Co. v. Kennedy, 65 W. Va. 595, 64 S. E. 1027 (1909); Eastern Oil Co. v. Coulehan, 65 W. Va. 531, 64 S. E. 836 (1909); Barbour, Stedman & Co. v. Tompkins, 81 W. Va. 116, 93 S. E. 1038 (1917); Ohio Fuel Oil Co. v. Greenleaf (W. Va.) 99 S. E. 274 (1919); Ash Grove Lime Co. v. Chanute Brick Co., 100 Kan. 544, 164 P. 1087 (1917); Baldwin v. Blue Stem Oil Co. (Kan.) 189 P. 920 (1920); Buffalo Valley Oil Co. v. Jones, 75 Kan. 18, 88 P. 537 (1907); Collins v. Mt. Pleasant Oil Co., 85 Kan. 483, 118 P. 54 (1911); Roach v. Junction Oil Co., 72 Okla. 213, 179 P. 934 (1919); Strange v. Hicks, 78 Okla. 1, 183 P. 347 (1920); Dickey v. Coffeyville Brick Co., 69 Kan. 106, 76 P. 398 (1904); Simon v. Northwestern Ohio Gas Co., 12 Ohio Cr. Ct. Rep. 170 (1896); Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76 (1902); Murdock-West Co. v. Logan, 69 Ohio St. 514, 69 N. E. 984 (1904); Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690 (1898); Northwestern Ohio Nat. Gas Co. v. Whitacre, 30 Ohio C. C. Rep. 737 (1892); Northwestern Ohio Gas Co. v. Tiffin, 59 Ohio St. 420, 54 N. E. 77 (1899); Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46 (1908); Gillespie v. Ohio Oil Co., 260 Ill. 169, 102 N. E. 1043 (1913); Chaney v. Ohio Oil Co., 32 Ind. App. 193, 69 N. E. 477 (1904); Indiana Nat. Gas Co. v. Beales, 166 Ind. 684, 76 N. E. 520 (1906); American Window Glass Co. v. Indiana Nat. Gas Co., 37 Ind. App. 439, 76 N. E. 1006 (1906); Indiana Nat. Gas Co. v. Pierce, 34 Ind. App. 523, 68 N. E. 691 (1903); 73 N. E. 194 (1905); Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527 (1917); Prowant v. Sealy, 77 Okla. 244, 187 P. 235 (1920); Zeller v. Boog, 7 Ohio C. C. Rep. (N. S.) 429 (1905); Hollister v. Vandergrift, 12 Ohio Ct. Rep. (N. S.) 586 (1892); Hazel Green Oil Co. v. Collier, 33 Ky. L. Rep. 495, 110 S. W. 343 (1908); American Window Glass Co. v. Williams, 30 Ind. App. 685, 63 N. E. 912 (1903).

Continuing, he says:

"It is equally clear, both upon principle and under the authorities just cited, that if the lessee is producing oil or gas in paying quantities at the expiration of the definite term, the lease shall remain in force as long as that condition continues. Thus, in Brown v. Fowler, it is said 'This clause means that the term of the lease is limited to two years (the definite or exploratory term), but that if within the two years oil or gas shall be found, then the lease shall run as much longer thereafter as oil or gas shall be found in paying quantities; but if no oil or gas shall be found within the two years, the lease shall, at the end of the two years, terminate, not by forfeiture, but by expiration of terms; and after the expiration of said two years no further drilling can be done under the lease.' In an Indiana case it is said: 'Such a clause will be construed as meaning that if the term is enlarged it must be by the production of gas or oil in paying quantities within the term specified; if such a contingency does not happen then the lease expires and is of no avail to either party.' In Murdock-West Co. v. Logan, the court observes: 'In order to continue their lease beyond the stipulated time it was necessary for the lessees to find oil in paying quantities. For this purpose it was not sufficient to complete a

well having some indications of oil or gas well which might be developed into a well producing oil in paying quantities, but the lessees must actually find oil in paying quantities, and this is the same as obtaining and producing it in paying quantities.'

"Thus far the decisions are in complete harmony, but there are other situations of almost equal importance which evidence a certain divergence in the adjudicated cases. The general rule is this: Where the fixed term has expired and where the lessee seeks to hold the leased premises under the extension clause, he not only must be engaged in producing oil or gas but the production must be in paying quantities. * * *

"The sole office of the habendum clause is to fix the duration of the lease. On the other hand, different provisions determine the measure of diligence to be exercised by the lessee in the development of the property. As a rule the obligation to drill during the specific term is set forth expressly. Where this is not the case, it arises by legal implication. After the expiration of the fixed term and where the lease is held by production under the 'thereafter' clause, the obligation for further drilling is usually implied. In either event the right to drill is restricted to the term of the lease as established by the habendum clause. Where a lease is for a definite term of years and as long thereafter as oil or gas is produced in paying quantities, the plain intent of the contract is that the lease shall terminate at the end of the definite term unless oil is being produced in the prescribed quantity. Where the lease is for a definite term of years and as long thereafter as oil or gas is produced, it is equally clear that the lease shall terminate at the end of the definite term unless oil or gas is being produced in some quantity.

"It is true that the drilling of an oil well is attended by such uncertainty that no one can anticipate the length of time which will be required to complete the undertaking. But the answer to the situation is readily apparent. The lessee must commence his well in ample time to enable him to complete it within the definite term of the lease, or he must provide against the contingency which the court describes by an appropriate term in his contract. The latter alternative is becoming an established custom in the business. In Oklahoma, Kansas, and Texas the following habendum clause is very generally employed:

" 'To have and to hold all and singular the rights and privileges granted hereunder to and unto the lessee, its successors and assigns, for the term of five years from date hereof (a) and as much longer thereafter as oil or gas shall be produced therefrom, (b) or royalties paid hereunder, (c) or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon, and should production result from such operations this lease shall remain in force as long as oil or gas shall be produced.' * * *

"Finally, then, where a lessee intends to hold his lease beyond the definite term by drilling operations alone, an appropriate provision to that effect should be embodied in the lease. * * *

"Even though the completion of a well within the fixed term may be prevented by a shortage of water, weather conditions, or other unexpected happenings, the lease expires at the end of the exploratory period, unless, contemporaneously therewith, oil or gas is being produced in paying quantities."

The correctness of this generalization by Mr. Veasy has apparently been acquiesced in and not challenged by the oil operators in the Mid-Continent field.

In the brief, amici curiae, filed in support of the contentions of the plaintiffs, the decision by Judge Kennamer in the case of Anglo-Texas Oil Co. v. Wilson, in the Northern District of Oklahoma, not published, is cited, but that case is easily differentiated from the instant case in that the well in that case was begun in time for it to have been completed before the expiration date of the term of the lease. I quote from the decision as follows:

"In view of the uncontradicted facts in this case that the plaintiff has commenced a well within the term clause of the lease, and within time to have completed it on or before the expiration date of the term clause had not unforeseen difficulties been encountered, and prosecuted the work diligently and had the well down to a depth of within a few feet of the oil sand when the drilling operations were caused to be ceased by the defendants notifying the drilling contractor of their intention to forfeit the lease and declare the rights of the plaintiff terminated, the plaintiff is entitled to a decree as prayed for in the bill enjoining the defendants from interfering with its rights obtained under the oil and gas lease."

The facts are not analogous to the instant case. In that case the well had been drilled to a depth of 2,550 feet on the last day of the five-year term. In the instant case no attempt was made to commence the actual drilling of a well. One of the lessees had only purchased his interest in the lease approximately 67 days before the expiration of the definite term, and at the date of the expiration of the lease did not have an engine, slush pit, boiler, or drilling tools on the lease, though the rig had been completed, and some valuable equipment in the way of pipe had been placed thereon.

Counsel for plaintiffs also cite the case of

N. Bert Smith v. Continental Oil Company, in the United States District Court of the Eastern District of Oklahoma, recently decided by Judge Williams, but whose decision has not been published, but is quoted at length in the brief of amici curiae. In this case it was stipulated that the well was drilling at a depth of 3,559 feet on the last day of the five-year term, which well had been begun three months previously and prosecuted with diligence, and that the day before the expiration of the five-year term a second well had been begun as evidence of good faith. This presented a far different state of facts than revealed by the instant case. In support of the decision, Judge Williams cites from this court as follows: Dow v. Worley, supra; Prowant v. Sealy, 77 Okla. 244, 187 P. 235; Strange v. Hicks, 78 Okla. 1, 188 P. 347. A careful reading of these cases does not in my opinion support the contentions of the plaintiffs in the instant case. In the case of Prowant v. Sealey, supra, the lease under consideration was similar to the one in the instant case, except that the habendum clause was as follows:

"To have and to hold the same for and during the term of three years from the date hereof, and as much longer thereafter as oil or gas is found therein, **or said premises developed or operated.**"

This court held that the words in the lease, "or said premises developed or operated" were intended to mean that if a well were commenced on the premises within the term of the three-year term of the lease, and if after the expiration of the three years drilling operations were still being prosecuted in good faith, the term was thereby enlarged or extended during the continuance of such drilling operations. We have no disjunctive terms, to wit, "or said premises developed or operated," in the instant case. In that case it must be conceded that said disjunctive terms were not altogether free from doubt and ambiguity.

The case of Strange v. Hicks, supra, had to do with the forfeiture of an oil and gas mining lease after gas had been discovered prior to the termination of the definite term of said lease, but which the lessees had been unable to market on account of there being no pipe line with which to connect the same. In that case the court very pointedly said:

"We do not believe that the plaintiffs come into court with clean hands. By acquiescing in the acts of the lessees in the development of this field, and making no claim that the lease was forfeited, but by every act of theirs indicating the lease was in full force and effect, they obtained an advantage which they sought to capitalize at the expense of the lessees. When they were told by the lessees that a greater volume of gas must be discovered in order to make this well remunerative to all, and when they saw at a great expense to lessees they were further developing the field, and furthermore when they were told and knew a ditch was being dug and gas pipe laid to their well, good conscience required them to then speak and claim their right of forfeiture. 'He that is silent when conscience requires him to speak should not be permitted to speak when conscience requires him to be silent'."

The plaintiffs also cite the case of Dow v. Worley, 126 Okla. 175, 256 P. 56, as authority sustaining their contention, but this court in that case expressly disclaimed any intention of passing on the question involved in this case in the following language:

"We do not feel called upon to pass upon the question as to whether the commencement of a well upon leased land, within the period for which rentals are paid, and its prosecution with reasonable diligence to actual production, which production is obtained after the period when rentals would have been due, will have the effect of continuing the lease in full force and effect after such period, for being of opinion from all the evidence in the instant case, that defendants were relying upon the terms of the original or Harrison lease covering the 200 acres, and having reached production in paying quantities upon a portion of the 200 acres, the lease remained in full force and effect so long as oil or gas is produced in paying quantities, and the leases of 1923 being executed but in confirmation of the original lease, and the change of ownership and interest necessitating such confirmation must be evidenced by two instruments, the judgment of the trial court should be reversed and this cause remanded, with directions to the trial court to vacate its judgment for the intervener and render judgment for defendants."

In Rose's Notes, on U. S. Reports (Rev. Ed.) Supplement, vol. 5, p. 343, relative to Guffey v. Smith, 237 U. S. 101-120, 59 L. Ed. 856, 35 Sup. Ct. 526, this rule is announced:

"Local decisions constituting rule of property must be accepted and applied in determining lessee's rights under oil and gas lease."

There is also cited the case of Lyon v. Union Gas & Oil Co., 281 Fed. 674, as following decisions of the Kentucky court as to validity of an oil and gas lease and its cancellation after reasonable time where development is demanded and refused. Also, Washburn v. Gillespie, 231 Fed. 41, 45, as following Oklahoma decisions declaring the surrender clause in an oil and gas lease

valid, and applicable to lessee alone. Also, Shaffer v. Marks, 241 Fed. 139, holding that under Oklahoma law the surrender clause in an oil and gas lease does not render it void. In the same note reference is made to the case of Hill Oil & Gas Co. v. White, 53 Okla. 754, 759, 157 P. 712, 713, holding the surrender clause in an oil and gas lease giving lessee option to terminate lease at any time deprives lessee of right to specific enforcement of lease. This court in the case of Hill Oil & Gas Co. v. White, supra, on rehearing was asked to reconsider the principle of law it had announced therein and to conform to the views of the Supreme Court of the United States in the case of Guffey v. Smith, supra. Mr. Justice Hardy, in writing the opinion of this court on the petition for rehearing, said:

"The original opinion is in harmony with the views of this court as previously expressed, and upon an examination of the case of Guffey v. Smith, supra, and the authorities called to our attention in briefs of counsel, we adhere to these views. The case of Guffey v. Smith was an action for injunction, brought in the United States District Court for the Eastern District of Illinois, by the holders of an oil and gas lease, to enjoin operations under a later and similar lease, and for other relief. The Circuit Court of Appeals denied the relief prayed for, and on appeal to the Supreme Court the action of the Circuit Court of Appeals was reversed; the opinion being placed upon the ground that under the decision of the Supreme Court of Illinois the plaintiffs therein had a vested interest in the premises, which entitled them under the federal equity practice to the relief demanded. In the opinion the court said:

" 'It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease like that of complainants passes to the lessee, his heirs and assigns, a present vested right—"a freehold interest"—in the premises, that this interest is taxable as real property, and that the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality.'—and cites in support thereof a long line of Illinois decisions, announcing this rule; and the opinion continues:

" 'These decisions constitute rules of property and must be accepted and applied in passing upon the complainant's rights,'—thus showing that the opinion of the Supreme Court was based upon the fact that plaintiffs under the rule in Illinois had a vested right in the premises; and the court, after calling attention to the fact that under the laws of that state plaintiffs had no adequate remedy at law, followed the well-settled rule that the remedies afforded and modes of proceeding pursued in the federal courts, sitting as courts of equity, are not determined by local laws or rules of decision, but by general principles, rules, and usages of equity having uniform operation in those courts wherever sitting, and reversed the decision of the Circuit Court of Appeals.

"Under the decisions in this state oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership, distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of oil that is in the ground, but of such a part as the grantee may find, and passes nothing that can be the subject of ejectment or other real action. Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902, 38 L. R. A. (N. S.) 451; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 P. 260, 43 L. R. A. (N. S.) 487; Duff v. Keaton, 33 Okla. 92, 124 P. 291, 42 L. R. A. (N. S.) 472. From the above quotation it is seen that, under the decision of Illinois, 'the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality,' while the rule in this state is that contracts unperformed, without sufficient consideration, which are optional as to one, are optional as to both, and specific performance thereof will not be awarded. * * *

"It is thus seen that the rule in the Guffey Case was based upon the principles that the decisions in Illinois constituted a rule of property, and as such were binding upon the federal courts, while those courts sitting as courts of equity were at liberty to apply their own remedies according to their own modes of procedure. This is the rule of the federal courts, and has been the uninterrupted holding of the Supreme Court of the United States. In Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289, Chief Justice Marshall used the following language:

" 'This court has universally professed its disposition, in cases depending on the laws of the particular state, to adopt the construction which the courts of the state have given to those laws.' * * *

"The original opinion is in harmony with the opinion by this court, and with the weight of authority, and is supported by sound reason, and this rule having been declared as early as 1910, and many leases having been executed in reliance thereupon, it would require very strong and cogent reasons for us to abandon same, and adopt a new rule in direct conflict therewith. To do so would create confusion and uncertainty, and perhaps flood the courts with litiga-

tion, and the opinion in Guffey v. Smith, being simply an application of the principle that state decisions construing leases of this character constitute rules of property which will be followed in the federal courts, furnishes no reason for overturning the previous decisions of this court,"

The courts of the state of Kentucky with reference to the drilling clause have apparently followed the rule that the lessor might refuse the rental and demand the drilling of a well within a reasonable time notwithstanding the fixed term of the lease. Sections 70 and 107, Mills-Willingham Law of Oil and Gas. This rule is not in harmony with the doctrine announced by this court, speaking through Mr. Justice Hardy in the case of Roach v. Junction Oil Co., supra, as follows:

"Where an oil and gas lease contains a provision that it shall be operative for the period of five years from date, or so long as gas, oil, or other minerals are found thereon in paying quantities, in, under, and upon said land, it is a condition precedent to the extension of lessee's right to continue operations beyond the five years that oil and gas or either of them should be found upon the premises in paying quantities within five years from the date of the lease."

This rule has not been deviated from by the courts of our state. This court, speaking through Mr. Justice Kennamer, in the case of Jackson v. Twin State Oil Co., 95 Okla. 96, 218 P. 324, said:

"Where the decisions of the court of last resort have been accepted and acted upon as the correct interpretation of the law for a long period of time, courts are slow to interfere with principles announced in the former decisions. * * *

"This court has in numerous cases held that equity will refuse to quiet title under an oil and gas lease where a well was not completed or payment tendered within the period fixed under expressed provisions of the lease, where the lease provided such failure to operate or pay the delay money shall terminate the contract as to both parties. Curtis v. Harris, 76 Okla. 226, 184 P. 574; Mitchell v. Probst, 52 Okla. 10, 152 P. 597; Bearman v. Dux Oil & Gas Co., 64 Okla. 147, 166 P. 199; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514."

It is observed that each of the top leases of the adult and minor heirs in this case has the following provision:

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein mentioned."

These leases, by such definite and appropriate provisions, which have no semblance of ambiguity or uncertainty, are for the express purpose of extending the definite term in addition to the "thereafter" extension clause, to wit, "and as much longer thereafter as oil or gas shall be produced therefrom." There was no such provision in the aforesaid John W. Van Meter lease which was purchased by plaintiffs.

The exploratory term in the lease in question is for a definite term of five years. The lease provides that it shall remain in force for a term of five years from this date—that is, the date of the lease, and not the date of the execution of the lease. It was during this period that the lessee had the right to go upon the premises to search for oil and gas under the terms and the conditions of the lease. During the time of this definite term the lessee had a right to cancel the lease, pay rentals, or permit the lease to terminate. The lessee did not find oil or gas during the term of this lease. It is definitely stated that the lease terminates five years from the date of the lease. The drilling, development, subsequent or defeasance clause, as contended for by the plaintiff, does not and cannot extend the fixed term stated in the lease. The language fixing the term is direct, positive, and free from doubt. The contention by the defendant attempts to assert that the clauses are ambiguous and repugnant to each other. These clauses are not ambiguous, nor are they repugnant and inconsistent and in conflict with each other. Full force and effect can be given both. If the subsequent, drilling, development, or defeasance clause is ambiguous and uncertain as to the term of said lease, then it must yield to the certain or definite term clause, the habendum clause, in said lease. In this connection I again quote from the case of Brown v. Fowler, supra:

"If this is not the clear construction of this clause, then its meaning is doubtful and uncertain; and the uncertainty of this clause cannot, in legal effect, have the force to overcome the certainty on the same subject in the habendum clause. Certainty in one part of an instrument will always prevail over uncertainty on the same subject-matter in other parts. True, an instrument must be considered and construed as a whole, taking it by the four corners, as it were, and giving effect to every part; but when one part is certain on a given subject, and all

the other parts are uncertain on that subject, the certain will prevail over the uncertain, even though there seems to be a general indefinite intention pervading the whole instrument to some extent inconsistent with such certainty."

Our court, in the case of Fairbanks, Morse & Co. v. Miller, 80 Okla. 265, 195 P. 1083, said:

"It is a well settled rule of law, where two clauses of a contract are so repugnant that they cannot stand together, the first is to be given effect and the latter rejected." 6 R. C. L. 236; Henne v. Summers, 16 Cal. App. 67, 116 P. 86."

See, also, 13 C. J. 535.

Plaintiffs are in reality seeking to have an interpretation placed on the provisions of their lease which would be tantamount to the writing of another contract. The courts do not write contracts. Plaintiffs must point to some plain provision in their lease before they are entitled to have the definite term in said lease extended. If there is ambiguity in reference to the extension provisions, this construction must be considered in favor of the lessor and against the lessee.

In the case of Concord Oil & Gas Co. v. Thompson, 248 Mich. 230, 226 N. E. 857, the Supreme Court of Michigan said:

"In the recent case of J. J. Fagin & Co. v. Burns, 247 Mich. 674, this court held that a lease of this kind, 'should be read not only according to its words, but in connection with the purpose of its clauses:' That such leases 'are to be construed for the benefit of the lessor and against the lessee;' that 'in fairness to lessors extension provisions should be made plain,' and that, if there be ambiguity therein, 'the construction must be in favor of the lessor'."

To maintain the contention of plaintiffs in this case for extension of the terms of said lease, it was incumbent upon them to incorporate such provision in their lease contract. This they failed to do.

In an equitable action the findings of the trial court should be sustained unless it appears that they are clearly against the weight of evidence. Voris v. Robbins, 52 Okla. 671, 153 P. 120; Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 P. 711; Lamb v. Alexander, 83 Okla. 292, 201 P. 519; Bobier v. Horn, 95 Okla. 8, 222 P. 238.

In this case no preparations were made to commence a well on the leased premises until a short time before the expiration of the five-year term of said lease. The plaintiff Simons testified at the hearing that he intended to proceed at the time he purchased his interest in said lease to drill the well to the Wilcox sand before the expiration of the term of the lease. The record shows that the weather conditions were bad, the roads muddy, and almost impassable. Plaintiffs apparently, by reason thereof, abandoned their intention to drill the well through the Wilcox sand before the expiration of the lease.

They now seek to hold said lease on the ground that it was only necessary for them to commence a well within the term time, though at the time the plaintiff Simons purchased his undivided three-fourths interest in the lease, which was on the 17th day of September, 1926, it was his purpose then, as testified to by him, to drill through the Wilcox sand before the expiration of the five-year term, which expired on the 20th day of February, 1927. It is my opinion that the judgment of the trial court should be sustained.

I am authorized to announce that Mr. Vice Chief Justice CLARK and Mr. Justice SWINDALL concur in this dissent.