BAIN et al. v. PORTABLE DRILLING CORP.

No. 33113. June 8, 1948.

Rehearing Denied Oct. 5, 1948.

*198 P. 2d 207.*

P. D. Erwin, of Chandler, for plaintiffs in error.

Wheeler & Wheeler, of Tulsa, for defendant in error.

LUTTRELL, J. This is an action to cancel an oil and gas lease and to enjoin the lessee from attempting to operate an oil and gas well thereon, or from removing any property therefrom, brought by the plaintiffs, Mark H. Bain et al., against the Portable Drilling Corporation, lessee under said lease. The case was tried to the court without a jury, and upon the conclusion of the evidence the trial court rendered judgment for defendant. Plaintiffs appeal.

The facts are practically undisputed. Plaintiffs, the owners of 80 acres of

land in Lincoln county, executed and delivered to defendant on October 22, 1945, an oil and gas mining lease covering said land. This lease provided that it should remain in force for a term of one year from date, and as long thereafter as oil or gas or either of them was produced from said land by the lessee.

On the same date plaintiffs and defendant executed a contract in connection with said lease whereby defendant agreed to commence operations for the drilling of a well on the leased premises within 120 days after October 22, 1945, at a location to be selected by defendant, and to drill said well to a sufficient depth, in the judgment of defendant, to test the Hunton Lime.

Defendant commenced a well upon the property within the 120-day period provided in the contract, and drilled the well to and into the Hunton Lime formation, found at a depth of approximately 4,490 feet, but was unable to obtain production from the Hunton Lime formation, although it expended considerable time and money in an effort to do so. It appears that in the drilling of the well defendant had encountered gas in the Skinner Sand, a formation found at a depth of approximately 4,135 feet, and that after it failed to produce either oil or gas from the Hunton Lime formation, defendant, on September 9, 1946, perforated or shot the well at the point where the Skinner Sand was encountered, and that said sand when so shot produced some gas. Defendant spent several days washing the sand and using other methods in an effort to increase the production of gas from said sand, but did not at that time obtain production in commercial quantities. Defendant made no further effort to produce gas from the Skinner Sand until February, 1947, at which time it again perforated or shot the Skinner Sand, and obtained production, which its witnesses testified was, in their judgment, in paying quantities. When it sought to have a purchaser of the gas connect to the well

it was forbidden to do so by plaintiffs, who thereupon brought this action.

Upon the failure of defendant to produce oil or gas from said well in paying quantities by October 22, 1946, plaintiff Mark H. Bain, on October 24, 1946, called the president of defendant on the telephone, advised him that the lease had expired by failure to produce within the year, and demanded a release of the lease, which the president refused. On January 13, 1947, Bain testified that he again called the president of the defendant and demanded a release of the lease, and was again refused.

Plaintiffs contend that under the terms of the oil and gas lease, it being for one year and as long thereafter as oil and gas, or either of them, was produced from the land by defendant, the failure to produce oil or gas in paying quantities, and to market the same so that plaintiffs would obtain royalty therefrom, automatically terminated the lease on October 22, 1946, the expiration of its primary term, citing in support of this contention, Pine v. Webster, 118 Okla. 12, 246 P. 429; Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329, and other cases holding that the word "produce," as used in the lease, means to produce in paying quantities. Defendant does not contend that it produced gas in paying quantities from said well prior to the expiration of the primary term of the lease, but calls attention to Roach v. Junction Oil & Gas Co., 72 Okla. 213, 179 P. 934, and Parks v. Sinai Oil & Gas Co., 83 Okla. 295, 201 P. 517, holding that the discovery of oil or gas within the term of the lease was sufficient to extend the term and give to the lessee the right to thereafter produce.

Defendant further contends that under the terms of the lease, it having commenced the well within the primary term, it was entitled to complete the same with reasonable diligence regardless of whether or not the primary term of the lease expired prior to such

completion. The trial court upheld this contention, and in so holding it did not err.

The oil and gas lease, as above pointed out, was for a term of one year and as long thereafter as oil or gas was produced. It provided that the lessee should deliver to the lessor one-eighth of all oil or gas produced and saved from the leased premises. It contained a paragraph governing the payment of delay rentals in which no time was specified for the payment of rentals and no amount was specified, thus evidencing the fact that the term of the lease could not be extended by the payment of delay rentals. After this provision it contained a paragraph providing that if the first well drilled on the land should be a dry hole, then and in that event, if a second well was not commenced within twelve months from the expiration of the last rental period for which rent had been paid, the lease should terminate, unless the lessee resumed the payment of rentals. In the same paragraph and as a part thereof it provided as follows:

" . . . and if the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned."

The supplemental agreement between the parties did not specify a time for the completion of a well upon the premises, but did specify that a well should be commenced within 120 days.

Plaintiff contends that the above-quoted provision of the lease was inoperative and must be disregarded, as it is not a complete provision or convenant and is not pertinent to the arrangement made by the parties. We do not agree with this contention. The provisions for rentals, and for the resumption of rental payments in the event a dry hole was drilled upon the property, obviously were inoperative, since the lease did not provide for any extension of time by the payment of rentals.

These paragraphs, however, remained in the lease; they were not canceled or deleted in any way, and the above-quoted provision was not, in our judgment, rendered ineffective or inoperative simply because it was contained in a paragraph which in part was inoperative. The above-quoted provision gave to the lessee the right to complete a well commenced within time whether such well was commenced within the primary term of the lease, as here, or whether it had been commenced within an extension of that term had the lease provided for the payment of rentals. It was a saving clause whereby the lessee, who had attempted to develop the lease and produce oil and gas therefrom in accordance with the provisions thereof, was protected in such effort so long as he continued with diligence his endeavor to complete a well commenced in good faith prior to the expiration of the lease.

In Smith v. Gypsy Oil Co., 130 Okla. 135, 265 P. 647, construing an oil and gas lease containing a provision almost identical with the provision above quoted, we held that if the lessee had in good faith commenced the drilling of such well prior to the expiration of the lease, he was entitled to drill and complete such well regardless of the date of the expiration of the lease. Other cases following the rule announced in Smith v. Gypsy Oil Co., supra, are Simons v. McDaniel, 154 Okla. 268, 7 P. 2d 419; Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okla. 203, 62 P. 2d 249, and Hicks v. Mid-Kansas Oil & Gas Co., 182 Okla. 61, 76 P. 2d 269. While in most of these cases the lease contained a provision for the payment of rentals, and provided that the lease should terminate if a well were not commenced within the term, or an extension of the term

obtained by the payment of rentals, and the well in controversy was commenced within the extended term obtained by the payment of rentals, we are unable to see the distinction between such a case and a case where, as here, the well was commenced within the primary term but not completed prior to its expiration.

In Simons v. McDaniel, supra, we held that such construction promoted development as contemplated by the parties, and was favorable to development, in that it permitted the completion of a well rightfully commenced.

The rule announced in the above case is approved by the Supreme Court of Montana in Consolidated Gas Co. v. Rieckhoff, 151 P. 2d 588, and the same rule is announced in McClanahan Oil Co. v. Perkins (Mich.) 6 N.W. 2d 742, where the court based its conclusion upon a provision similar, if not identical, to the one quoted above.

The rule announced in the above cases is just and reasonable. It would be unjust and inequitable to hold that a lessee who is required to commence a well within a specified time after the execution of the lease, and who commenced said well within such time, should, although the drilling thereof is prosecuted in good faith and with reasonable diligence, be deprived of the right to complete such well after the expiration of the term of the lease, in the absence of an express provision in the lease to that effect. The provision above quoted was inserted in the lease to prevent such an unjust and inequitable result, and we find nothing in the lease or supplemental contract executed by the parties which either expressly or by reasonable implication nullifies the above-quoted provision, or renders it inoperative or unavailing to the lessee. We hold that such provision in the lease, in the absence of any express covenant or agreement to the contrary, is valid and binding upon the lessor, and is not rendered inoperative because it is contained in a paragraph with other portions of which are inoperative. In such case all provisions of the lease which are not rendered inapplicable by the failure to provide for the extension of time by the payment of rentals should be given effect, and the parties protected in their rights thereunder.

The contentions of plaintiffs that the evidence shows that defendant abandoned the lease; that it did not use due diligence and dispatch in completing the well, and that the trial court erred in admitting hearsay and opinion evidence, may all be considered together, since they are to some extent interwoven. Plaintiffs assert that the lease and contract between the parties was for the production of oil and gas from the Hunton Lime formation, and did not contemplate any production from any other horizon. We find nothing in the lease and supplemental contract from which this may be inferred. Plaintiffs further say that the defendant abandoned its efforts to obtain production from the Hunton Lime on June 4, 1946; that its attempt to produce from the Skinner Sand was in the nature of an afterthought on its part, and that its failure to take any steps to obtain production from that sand until September, 1946, amounted to an abandonment of the entire project. They also assert that the fact that defendant shot the Skinner Sand in September, then permitted the well to lie idle and made no further effort to produce therefrom until in February, 1947, established a lack of diligence in conpleting the well in the Skinner Sand.

The witnesses for defendant explained that the delay in perforating the Skinner Sand during the period between June 4, 1946, and September of that year was due to the fact that they were desirous of producing from the Hunton Lime if possible, and that although they knew that they had encountered gas in the Skinner Sand, they were reluctant to abandon the idea of producing in the Hunton Lime, and were attempting to determine if they

had sufficiently explored or tested that horizon. They testified further that the Skinner Sand had been sealed off when they drilled to the lower Hunton Lime formation, and that when they finally decided to shoot that sand in September they endeavored to wash out or clean the sand sufficiently to obtain the production of gas which they thought it would produce, but were unable to do so, and that in the interval between September, 1946, and February, 1947, when they again shot the Skinner formation, they were watching and checking the well to determine whether or not, as a result of the first shot and cleaning process, it was showing sufficient gas to justify further attempts to make a well in the Skinner Sand. It appears that they did not remove the casing from the well, or other equipment from the lease except the drilling tools alone. This conduct on their part did not evidence an abandonment of the lease. Doss Oil Royalty Co. v. Texas Co., 192 Okla. 359, 137 P. 2d 934.

In Mistletoe Oil & Gas Co. v. Revelle, 117 Okla. 144, 245 P. 620, we said:

"A court of equity will decree a forfeiture of the whole or part of an oil and gas lease, on account of a breach of an implied covenant to diligently operate and develop the property, when such forfeiture will effectuate justice. The granting of such relief depends upon the facts and circumstances surrounding each particular case."

This case was cited with approval in Worrell v. Parsons, 133 Okla. 61, 271 P. 155, in which case we held that the shutting down of a producing well upon property temporarily for some four or five months did not amount to an abandonment of the lease, or to such lack of diligence as would justify forfeiture.

In the instant case there is no substantial evidence showing that the defendant intended to abandon the lease, or that the delay in completing the well in the Skinner Sand was prejudicial to plaintiffs. From the evidence it appears that until a well producing oil or gas in paying quantities was drilled upon their land, plaintiffs received an overriding interest in an adjoining well or wells, which they admitted they preferred to a small well upon their own property. The trial court found that defendant used reasonable diligence in completing the well, and that whether it was capable of producing in paying quantities was not susceptible of definite ascertainment at the time this action was brought. The finding of the trial court was not clearly against the weight of the evidence, and was further justified by the fact that a forfeiture of the lease under the existing conditions would not effectuate justice.

The evidence to which plaintiffs objected and of which they complain was the testimony of officers of defendant as to the reasons why they delayed the further development of the Skinner Sand production, and of instructions given by them to subordinates to watch the well and check its conditions. While some of this testimony was perhaps admitted in violation of strict rules of evidence, it did not prejudice plaintiffs in any way, and the error, if any, was harmless.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.

