## WICKHAM et al. v. SKELLY OIL CO.

### Civ. No. 3138.

United States District Court
E. D. Oklahoma.
June 23, 1952.

62

Ames, Daugherty, Bynum & Black, Oklahoma City, Okl., for plaintiffs.

James E. Hara, Gayle M. Pickens, and Hawley C. Kerr, Tulsa, Okl., for defendant.

WALLACE, District Judge.

This is an action by H. C. Wickham, Kenneth McAfee, John C. Voorhees, and Midwest Oil Corporation against the Skelly Oil Company to quiet title to the mineral interests of the plaintiffs and for an accounting of oil production. The Skelly Oil Company, by counterclaim, seeks to have title to an oil and gas lease allegedly covering the mineral interests of the plaintiffs quieted, and to have the lease declared a valid and subsisting lease.

Jurisdiction of the court is based upon diversity of citizenship and an amount in controversy exceeding $3,000, exclusive of interest and costs.

## Opinion

The facts are not in dispute. On September 3, 1946, A. W. Pettigrew, joined by his wife, Willie D. Pettigrew, as lessors, executed and delivered to L. A. Edwards, as lessee, an oil and gas lease covering the following described land situated in Stephens County, State of Oklahoma, to-wit:

The North Half of the Northwest Quarter (N/2 NW/4) and the Southeast Quarter of the Northwest Quarter (SE/4 NW/4) of Section Fourteen (14), Township Two (2) North, Range Five (5) West.

The lease was duly assigned to the Skelly Oil Company, defendant herein.

At the time of the execution of the lease, A. W. Pettigrew was the sole owner of and had the exclusive right to lease the entire mineral interest under the above described land. The lease was for a definite or fixed term of five years with a "thereafter" clause. Subsequent to the execution and recordation of the lease, but prior to the expiration of the definite term on September 3, 1951, the plaintiffs acquired the following undivided interests in the mineral estate in the amounts indicated opposite their respective names:

H. C. Wickham .................. 1/10
Kenneth McAfee ............... 1/24
John C. Voorhees .............. 1/12
Midwest Oil Corporation ........ 1/12.

In November, 1951, and after the expiration of the definite term of the lease, A. W. Pettigrew and his wife conveyed a 1/15th or eight-acre mineral interest in the premises to one Ura Thompson, which interest by mesne conveyances was acquired by the Saltmount Oil Company, now Midwest Oil Corporation, which made a total of 3/20ths interest for the Midwest Oil Corporation.

The plaintiffs thus own together an aggregate 3/8ths undivided interest in the mineral estate under the aforementioned land. The defendant is the owner of an undivided 3/16ths interest in the mineral estate, which interest was acquired prior to the expiration of the definite term of said lease.

The defendant, Skelly Oil Company, maintained the oil and gas lease in full force and effect during the five year definite term by the timely payment of delay rentals provided for in the lease. A resumé of the activities in development of the premises follows.

On or about June 30, 1951, which was during the last year of the definite or fixed term of the lease, the defendant commenced the drilling of its first well on the premises which was called the Pettigrew Well No. 1. After having commenced the first well, the defendant with due diligence continued the drilling thereof during the remainder of the fixed term of the lease and thereafter with due diligence continued the drilling of the well until it was completed as a dry hole.

The first well was drilled to a total depth of 5,796 feet, which depth was reached sometime during the afternoon of September 18, 1951. Commencing at about 4:00 p. m. on the same day the drill pipe was removed from the hole, and immediately thereafter a Schlumberger electrical well log survey was begun, which survey was completed at approximately 11:45 p. m., whereupon the drill pipe was returned into the hole to maintain circulation of the drilling mud while awaiting on orders from the defendant as to whether the well should be completed in any of the encountered formations, drilled deeper or abandoned as a dry hole. From 11:45 p. m. on September 18th until approximately 4:00 p. m. on September 19, 1951, the drilling contractor kept the hole conditioned by washing down and reaming the bottom five feet of the hole and by maintaining the circulation of the drilling mud. During the morning of the 19th, the Schlumberger survey was examined by the defendant's geologists in the home office in Tulsa, Oklahoma. At 4:00 p. m. the same day, the drilling contractor was instructed to abandon the well as a dry hole. Thereupon the drilling contractor commenced rigging up to remove the drill pipe from the well and to lay it down in preparation

for removal to a new location. The operations of laying down the drill pipe and of tearing down the rig continued during September 20th and 21st. The Pettigrew Well No. 1 was finally capped with cement on November 11, 1951.

With respect to defendant's activities in connection with the second well on the premises, the Pettigrew Well No. 2, defendant on September 17, 1951, gave verbal and written instruction from its Tulsa office to Mr. H. H. Haper, its District Superintendent at Velma, Oklahoma, to commence the drilling of the Pettigrew Well No. 2 at a different location on the lease. On September 18th, one of defendant's employees contacted the Stephens County Surveyor to survey and stake the location of the second well. The second well location was staked sometime during the morning of the 19th of September, and at approximately 1:00 p. m. the same day the defendant, through contractors, began the construction of roads and the clearing and leveling of the location. This work continued during the afternoon and was resumed during the morning of September 20th. Work preliminary to the actual drilling of a well was continued during the 20th, 21st and 22nd of September and on the 23rd of the month the Pettigrew Well No. 2 was spudded in. The same rig and tools that were used in drilling Well No. 1 were used in drilling Well No. 2. After spudding in the second well, drilling operations were carried on continuously and with due diligence until the well was completed on or about the 1st day of November, 1951, as a well capable of producing oil in paying quantities.

The second well, the Pettigrew Well No. 2, was drilled to a total depth of 3,877 feet, but was plugged back and completed at a depth of from 2,220 feet to 2,260 feet, where the formation was encountered which was capable of producing oil in paying quantities. From and since the completion of the second well, oil has been and still is being produced from said well in paying quantities.

Upon learning that the Pettigrew Well No. 1 had been completed as a dry hole and that the Pettigrew Well No. 2 had been commenced, the plaintiffs Wickham, McAfee and Voorhees notified the defendant by letter dated October 25, 1951, that they considered the lease as having expired upon the completion of the first well as a dry hole. Plaintiff Midwest Oil Corporation notified the defendant to the same effect by a letter dated November 15, 1951.

So far as the court has been able to ascertain the main issue in this case has never been adjudicated, and thus it falls within the category of a case of first impression. The plaintiffs contend: first, that the defendant had no authorization or right to commence the second well under the provisions contained in the lease; and second, that in any event the second well was not commenced in time. To this the defendant answers, taking the position that the provisions in the lease authorized the commencement of the second well; that the second well was commenced in time; and that the lease is still a valid and subsisting one.

The oil and gas lease before the court for interpretation is a standard Producers Revised Form 88, the pertinent parts of which, insofar as this litigation is concerned, are the habendum clause, the delay rental or drilling clause, and the well completion clause. These three clauses of the lease in question are set out below.

Habendum Clause: "It is agreed that this lease shall remain in force for a term of five years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

Delay Rental Clause: "If no well be commenced on said land on or before the 3rd day of September, 1947, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First National Bank at Marlow, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of one hundred twenty dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. The payment herein referred to

may be made in currency, draft, or check at the option of the lessee. In like manner and upon like payments or tenders the commencement of a well may be further deferred for periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable, as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

Well Completion Clause: "If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned."

As before stated, the defendant has taken the position that the lease was extended by the drilling of the first well; that while such well was in the process of drilling, even though after the expiration of the definite or fixed term of the lease, the defendant had the right to start another well (the Pettigrew Well No. 2); and that the second well was commenced within the limits of the lease since the second well comes within that portion of the "well completion clause" which states " * * * within the term of this lease or *any extension thereof.* * * *" With such contention this court cannot agree.

At the outset, it should be noted that the defendant was a cotenant of the minerals at the time the second well was commenced. That the defendant was not a trespasser and that the defendant had the undisputed right to drill the second well as a cotenant is not controverted by the plaintiffs. This is the established majority rule and is followed in Oklahoma. Moody v. Wagner, 167 Okl. 99, 23 P.2d 633. However, the plaintiffs rely upon a termination of the lease, and take the position that the

defendant drilled the second well as a cotenant without consent of other cotenants. Thus plaintiffs seek an accounting of the oil produced from the Pettigrew Well No. 2.

The case relied upon most assiduously by the defendant is that of Simons v. McDaniel, 154 Okl. 168, 7 P.2d 419. In that case the Oklahoma court had a lease before it which had an habendum clause stating the term of the lease to be for five years with the conventional "thereafter" clause. The lease contained a delay rental clause also, but *no well completion clause.* It was held that where a well was commenced within the *term fixed by the lease* contract, the lessee had *a right to complete* the well *after the fixed term had expired.* There was a strong dissenting opinion, but it became the established rule in Oklahoma.

In an earlier Oklahoma case, that of Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647, the court had a lease to construe, the main issue being whether a well was commenced in time. However, the court used the following language:

" * * * One of the grounds relied upon by plaintiffs to cancel the lease is that the provision of the lease requiring the lessee to commence to drill a well within the terms of the lease had not been complied with. This provision of the lease reads as follows:

" 'If the lessee shall commence to drill a well within the terms of this lease, or any extension thereof, the lessee shall have the right * * * as if such well had been completed within the term of years herein first mentioned.'

"As hereinbefore stated, *the lease expired by its terms on September 14, 1925.* * * *" (Emphasis added.)

The court held that the lessee had commenced the well in time and had the right to complete it, but the court unqualifiedly stated that the lease had expired.

In Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okl. 203, 62 P.2d 249, the court construed a lease similar to the one considered in the case of Simons v.

McDaniel, supra, and approved the holding in that decision. The Oklahoma court referred to the dissenting opinion in the Simons case and the opinion of text-writers on the subject, but took the position that the question involved had been ruled on and that it was considered a sane and sensible construction of a lease where there is ambiguity or conflicts in the lease. In the Champlin case the court used language to the effect that *the lease did not expire.*

In the case of Woodruff v. Brady, 181 Okl. 105, 72 P.2d 709, 113 A.L.R. 391, the Oklahoma court by dictum repudiated its former holdings. Although the case was not considering the identical issue, the court in the first syllabus stated:

"The terms 'produced' and 'produced in paying quantities,' as used in an oil and gas lease for a given term and as much longer as oil or gas is produced, or produced in paying quantities, have substantially the same meaning, and an oil and gas lease containing the following habendum clause: 'It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee,' expired five years from the date thereof unless oil or gas was produced in paying quantities from the leased premises."

The holding in the Simons case, supra, and the Champlin Refining Company case, supra, were followed in the later case of Hicks v. Mid-Kansas Oil & Gas Co., 182 Okl. 61, 76 P.2d 269, 273. The lease in the Hicks case was similar to those leases in the two aforementioned cases in that there were the "habendum" and "delay rental" clauses, but no "well completion" clause. The Oklahoma court was called upon to rule on the question as to cancellation of the lease, and again it held that the lessee had a right to complete the well which was commenced within the term of the lease. The court did not stop there, however, but went on to say:

"Thus we conclude that *the habendum clause does not within itself fix the duration of the lease,* and, when considered with the development clause,

there is no such ambiguity as to require resort to parol evidence, consequently no error occurred in rejecting such evidence nor in denying a continuance because of absence of a witness, a party plaintiff, who would testify as indicated." (Emphasis added.)

The Oklahoma case which most nearly approaches the problem involved in the case at bar is that of Bain v. Portable Drilling Corporation, 200 Okl. 569, 198 P.2d 207, 209. The Bain case reviewed the former decisions of the Oklahoma court and the language used in the case is indicative of what the Oklahoma court would hold in a case such as the one before this court at the present time. It is interesting to note that Justice Riley, who wrote the opinion of the majority of the court in both the Simons case, supra, and the Hicks case, supra, approved of the language of the court as did Chief Justice Hurst who had dissented in the Hicks case.

The lease construed in Bain v. Portable Drilling Corporation was for a term of one year with a "thereafter" clause. A well was commenced within the time permitted by the lease, but was not completed before the day set for the expiration of the lease. In order to get the full benefit of the terminology used by the Oklahoma court, this court will quote extensively from that opinion.

"* * * Defendant further contends that under the terms of the lease, it having commenced the well within the primary term, it was entitled to complete the same with reasonable diligence regardless of whether or not the primary term of the lease expired prior to such completion. The trial court upheld this contention, and in so holding it did not err.

"The oil and gas lease, as above pointed out, was for a term of one year and as long thereafter as oil or gas was produced. * * * It contained a paragraph governing the payment of delay rentals in which no time was specified for the payment of rentals and no amount was specified, thus evidencing the fact that the term of the lease could not be extended by the

payment of delay rentals. After this provision it contained a paragraph providing that if the first well drilled on the land should be a dry hole * *. In the same paragraph and as a part thereof it provided as follows:

"'* * * and if the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned.'

"The supplemental agreement between the parties did not specify a time for the completion of a well upon the premises, but did specify that a well should be commenced within 120 days.

"Plaintiff contends that the above quoted provision of the lease was inoperative and must be disregarded, as it is not a complete provision or covenant and is not pertinent to the arrangement made by the parties. We do not agree with this contention. The provisions for rentals, and for the resumption of rental payments in the event a dry hole was drilled upon the property obviously were inoperative, since the lease did not provide for any extension of time by the payment of [delay] rentals.

"These paragraphs, however, remained in the lease; they were not cancelled or deleted in any way, and the above quoted provision was not, in our judgment, rendered ineffective or inoperative simply because it was contained in a paragraph which in part was inoperative. The above quoted provision gave to the lessee the right to complete a well commenced within time whether such well was commenced within the primary term of the lease, as here, or whether it had been commenced within an extension of that term had the lease provided for the payment of [delay] rentals. It was a saving clause whereby the lessee,

who had attempted to develop the lease and produce oil and gas therefrom in accordance with the provisions thereof, was protected in such effort so long as he continued with diligence his endeavor to complete a well commenced in good faith *prior to the expiration of the lease.*

"In Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647, construing an oil and gas lease containing a provision almost identical with the provision above quoted, we held that if the lessee had in good faith commenced the drilling of such well *prior to the expiration of the lease,* he was entitled to drill and complete such well *regardless of the date of the expiration of the lease.* Other cases following the rule announced in Smith v. Gypsy Oil Co., supra, are Simons v. McDaniel, 154 Okl. 268, [168] 7 P.2d 419; Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okl. 203, 62 P.2d 249; and Hicks v. Mid-Kansas Oil & Gas Co., 182 Okl. 61, 76 P.2d 269. While in most of these cases the lease contained a provision for the payment of rentals, and provided that the lease should terminate if a well were not commenced within the term, or an extension of the term obtained by the payment of rentals, and the well in controversy was commenced within the extended term obtained by the payment of rentals, we are unable to see the distinction between such a case and a case where, as here, the well was commenced within the primary term but not completed prior to its expiration.

* * * * * *

"The rule announced in the above cases is just and reasonable. It would be unjust and inequitable to hold that a lessee who is required to commence a well within a specified time after the execution of the lease, and who commenced said well within such time, should, although the drilling thereof is prosecuted in good faith and with reasonable diligence, be deprived of the right to complete such well *after the expiration of the term of the lease,*

in the absence of an express provision
* * * to that effect. * * *"
(Emphasis added.)

In a very recent case, that of McClain v. Harper, 244 P.2d 301, the Oklahoma court again stated that a well commenced within the term for which delay rentals had been paid extended the term of the lease to allow completion in good faith of such well. The lease in that case had a continuous drilling clause which permitted the lessee to hold the lease so long as operations were diligently carried on, therefore it is not applicable to the facts in the case at bar.

It is apparent upon a close scrutiny of the above cited Oklahoma cases that the terminology used by the court in each was such as to be applicable to the particular issue presented to the court and none other. Every person versed in the law is well aware of the difficulty which judges encounter as a result of terminology used in deciding a particular factual situation when at a later date the facts are different and attorneys rely upon the language of the court in the former decisions to sustain a point which was not even within the mind or contemplation of the court at the time the former decisions were rendered. Such is the case here. Every Oklahoma case cited herein decided one main issue and that upon the facts then existing.

In Simons v. McDaniel, Champlin Refining Co. v. Magnolia Petroleum Co., and Hicks v. Mid-Kansas Oil & Gas Co., supra, the court held one thing and that was that a well commenced within the period. for which delay rentals had been paid could be completed as a matter of right by the lessee. If such well proved to be a commercial producer, then the "thereafter" clause would take effect. The lessees of oil and gas leases were quick to realize that it is best to have an express clause in a lease to permit the completion of a well commenced within the express term of the lease, even if only as a safeguard; therefore, the great majority of the leases today have the well completion clause similar to the one contained in the lease here in controversy.

There are innumerable rules or guides for the interpretation of contracts, but of prime importance is the intention of the parties. In this respect, the intention of the parties must be deduced from the contract in its entirety and not from isolated parts, for where a contract has several stipulations, it is readily apparent that the parties agreed that all stipulations or parts should be considered together, and so interpreted as to be consistent with every other part. Another general rule in the construction of oil and gas leases is that in an "unless" lease is construed against the lessee. This was succinctly stated by the court in the case of Phillips Petroleum Co. v. Curtis, 10 Cir., 182 F.2d 122, 125, wherein it was said:

"* * * When a contract is optional in respect of one party thereto, it will be strictly construed in favor of the other party; and an 'unless' lease is construed 'most strongly' against the lessee and in favor of the lessor. * * *"

The courts have made one exception to the general rule that a lease is construed most strongly against the lessee in an "unless" lease, and that is when development as contemplated by the parties would be promoted. But to paraphrase the words of a noted authority, there are limitations on the judicial interpretation of contracts, and "fireside equities" should not be carried to an extreme.

An examination of the lease here in controversy definitely shows that the *term* of the lease is for five years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee. Another clause to be considered is the well completion clause which is as follows:

"If the lessee shall commence to drill a well within the *term* of this lease *or any extension thereof,* the lessee shall have *the right* to drill such well to completion with reasonable diligence and dispatch, *and if* oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect *as if* such

well had been completed within the *term* of years herein first mentioned." (Emphasis added.)

There can be no doubt that the phrase "or any extension thereof" refers to or modifies the word "term". The one and only clause in the lease specifying the term is the habendum clause. It is not inconsistent to say that the lease terminates at the end of the designated term and to still say that the lessee has a *right* to complete a well rightfully commenced. In this case such a *right* is expressly given. The remainder of the "well completion clause" not only contemplates the termination of the lease at the end of the definite or fixed term, but it also by direct implication so states. This is shown by the very wording of that part of the clause which states "* * * the lessee shall have the right * * *, and *if* * * *, this lease shall continue * * * *as if* such well had been completed within the *term* of years herein first mentioned." In other words, the lease terminated at the end of the five years, but if a well was commenced within that term and was diligently drilled to completion and was a producer in commercial quantities, then the lease would again become effective and the "thereafter" clause would take over. Stated another way, the lease terminates at the end of the definite term as set out in the habendum clause with the provision that upon a condition subsequent being met, i. e., the completion of a well commenced within the term for which delay rentals are paid and resulting in a producer, then the lease will be reinstated and will relate back to the original term of the lease, enabling the "thereafter" clause of the habendum to become operative.

As before stated, all of the words and clauses of the lease must be given effect, therefore the question arises as to just what is meant by the phrase "or any extension thereof". In the opinion of this court such a phrase could, in the light of the entire lease as a whole, have only three logical interpretations. One is that the word "extension" is used interchangeably with "renewal" so that the definite term of the lease may be changed or extended *by agreement* between the parties, which would in effect be a new lease or a modification of the old and would require the execution of a new instrument with the same formalities as the original; secondly, that the phrase refers to an extension of the term by the operation of the "thereafter" clause so that if a well was begun after the expiration of the term of years but while the lease was held by production under the "thereafter" clause, and before such well could be completed the production ends, then the lessee would have the right to complete such well with diligence and dispatch and the lease would be reinstated upon meeting the condition subsequent of obtaining production from the well so commenced; thirdly, an interpretation intimated by the Oklahoma court in Bain v. Portable Drilling Corporation, supra, wherein the court said [200 Okl. 569, 198 P.2d 21.]:

"* * * While in most of these cases the lease contained a provision for the payment of rentals, and provided that the lease should terminate if a well were not commenced within the term, *or an extension of the term obtained by the payment of rentals, and the well in controversy was commenced within the extended term obtained by the payment of rentals, we are * *.*"
(Emphasis added.)

Assuming but not deciding that all three interpretations above are included in the phrase "or any extension thereof", the defendant still was without right in commencing the second well within the provisions of the lease.

As before stated, the court is of the opinion that the phrase "or any extension thereof" refers to one or more of the situations set out in the preceding paragraph. To give effect to the defendant's contention would be an unreasonable interpretation inconsistent with the intent of the parties as shown by the lease in its entirety. No court will rewrite or reform a contract for the parties in the absence of fraud or mutual mistake, therefore, this court will not rewrite the lease contract for the parties and in effect substitute a reformed contract for them to include something which is not present in the lease

70

as made. To do so would be to construe a simple "well completion clause" to have the meaning of a "continuous drilling clause" or a "continuous development or operation clause". If the parties to the original lease had desired such a clause, it could have been easily inserted into the "habendum clause". It is elementary of course that the defendant as assignee can gain no more rights under the assigned lease than the assignor had at the time of the assignment, therefore, assuming that the defendant might have inserted a "continuous drilling clause", such assumption does not aid it here.

■ Lessees long ago learned that "continuous drilling clauses" were available for their use and that such clauses were upheld and sanctioned by the courts. Prowant v. Sealy, 77 Okl. 244, 187 P. 235. It is common knowledge that lessees are the ones who prepare and draft oil and gas leases, and the courts will not strain to interpret one clause in a lease to give it the force and effect of an entirely different clause when such different clause was available for use at the time the lease was drawn.

It is also significant to this court that of all the extensive litigation concerning the field of oil and gas law this precise factual situation has never arisen before. Perhaps the defendant was not too much concerned about the litigation which was bound to follow upon notice by some of the mineral owners that they considered the lease at an end before defendant had completed the Pettigrew Well No. 2, for the defendant being a cotenant knew it had the right to drill the second well without consent from the other cotenants and also knew that such nonconsenting cotenants would have to bear their proportionate share of. the expenses of the well from any production that resulted.

The decision of the court makes it unnecessary to pass upon the question as to whether or not the Pettigrew Well No. 2 was commenced on time should the lessee have had the legal right within the provisions of the lease to commence said well. However, the court does add that such issue is a very close one. The facts disclose that the total depth of the Pettigrew Well No. 1 was reached on the 18th of September, 1951, that a Schlumberger survey was run the same day, and that the. survey was scrutinized by the defendant's geologists on the morning of the 19th. Actual instructions to abandon the hole as being dry did not reach the drilling contractor until four o'-clock on .the 19th, but it is safe to assume that the geologists for the defendant had knowledge that the well was dry and *completed* sometime during the morning of the 19th. Thus the only actual physical steps which would show commencement of the Pettigrew Well No. 2 during the morning of the 19th, as would be reflected by an actual view of the location, would be the driving of the location stake. Good faith and continued operations with diligence seem to be the primary factors in determining what is "commencement", therefore, the court adds by way of dictum that had the Pettigrew Well No. 2 been authorized under the provisions of the lease, it probably would have been "commenced" within time.

■ It is the judgment of the court that when the Pettigrew Well No. 1 was completed as a dry hole, all of defendant's rights under the oil and gas lease were exhausted and that the Pettigrew Well No. 2 was drilled by the defendant as a cotenant and not under the terms of any valid subsisting lease, therefore, the complaining plaintiffs are entitled to an accounting of the oil and gas runs from the said well, subject to their proportionate part of the expenses, and are entitled to a decree quieting their title to and in the minerals under the land aforementioned free and clear of the lease in controversy.

Counsel are directed to submit a journal entry in conformity with this opinion within ten days from this date.