Carl VINCENT, Appellee,

v.

TIDEWAY OIL PROGRAMS, INC., as managing general partner for and on behalf of Tideway Oil Limited Partnership 1974–1, Tideway Oil Programs, Inc., as managing general partner for and on behalf of Tideway Oil Limited Partnership 1974–2, Tideway Oil Programs, Inc., as managing general partner for and on behalf of Tideway Oil Limited Partnership 1974–3, Tideway Oil Programs, Inc., as managing general partner for and on behalf of Tideway Oil & Gas Associates, Ltd. No. 1, and E. V. Cleveland, Marvin L. Oxley and James A. Williams, Appellants.

No. 54216.

Court of Appeals of Oklahoma, Division No. 1.

April 29, 1980.

Released for Publication by Order of Court of Appeals May 29, 1980.

Don Pearson, Muskogee, for appellee.

Lawrence, Scott & Lamb by G. Nash Lamb, Tulsa, for appellants.

BOX, Judge:

An appeal by the lessees under an oil and gas lease from an order of the trial court cancelling the lease upon the petition of the plaintiff–lessor, Carl Vincent.

The case was tried to the court upon the following stipulated facts. The lessor executed an oil and gas lease to R. W. Bobo, predecessor in interest of the Appellants–lessees, on December 27, 1974. The lease was created for a primary term of three years with an obligation on the lessees to commence a well on the lease prior to December 27, 1975, or forfeit the lease. A well was commenced prior to that date and was completed as a gas well on April 15,

1976. The gas well was shut in to await a pipeline connection by Phillips Petroleum Company. On October 16, 1976, Phillips connected the pipeline and on October 28, production began. There was continuous gas flow until February of 1977, and during that time gas valued at $1,514.14 was derived from the well. No royalties were paid. The well was again shut in on February 12, 1977. From then until November 12, 1977, the lessees did no work on the lease site. On that date the lessees began rework on the well by testing an upper zone. Oil was found, and the well was made ready for production on November 16, 1977. Once again the well was shut in awaiting the laying of concrete pads and the installation of storage tanks. The primary term of the lease expired on December 27, 1977. On January 10, 1978, the lessees arrived at the drill site to install the storage tanks. They were denied admittance by the lessor, who had obtained an injunction to keep them off the site.

Upon reviewing the lease, the stipulated facts, and trial briefs, the court found as follows:

> The Court finds that a well was commenced on said property within the specified term of the lease, but that the lease or well which was commenced was abandoned and the defendant [LESSEE], and each of them, forfeited any rights to said lease on February 12, 1977; the Court finds that there was no work done or attempted to be done from February 12, 1977, until November 12, 1977, and this constituted an unreasonable delay and there was no diligent attempt to complete the well as provided for in the lease.

> The Court further finds that there was no oil or gas, or either, produced in paying quantities at any time during the term of this lease in that the defendant's proof showed that certain monies were gained from the oil or gas, or both, but there was no royalty paid on said sums of money which leads this Court to believe that it was not sufficient to be in paying quantities, and further, that the defendant [LESSEE], and each of them, failed to pay delay rentals as provided in said lease.

Upon these findings the court cancelled the lease stating it had terminated by its own terms for dilatory delays in completing the well, which constituted abandonment, for non-payment of delay rentals, and for failure to produce oil and gas in "paying quantities" during the primary term. From this order the lessees have appealed.

■ An action for cancellation is one of equity. Therefore, we must weigh the evidence in order to determine if the judgment of cancellation is against the clear weight of the evidence. If it is not, we must affirm. *Fox Petroleum Co. v. Booker*, 123 Okl. 276, 253 P. 33, 34.

The relevant portions of the lease, a form of the Producer's 88 lease, are as follows:

[HABENDUM OR TERM CLAUSE]

> It is agreed that this lease shall remain in force for a term of <u>three</u> years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

. . . . .

[ROYALTIES CLAUSE]

[DELAY RENTAL CLAUSE]

If no well be commenced on said land on or before the <u>27th</u> day of <u>December</u>, <u>1975</u>, and this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or the lessor's credit in the _____ Bank at _____ or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of _____ DOLLARS, which shall operate as rental and cover the privilege of deferring commencement of a well for _____ months from said date . . . .

[DRY HOLE CLAUSE]

[DEVELOPMENT CLAUSE]

. . . If the lessee shall commence to drill a well within the term of this lease on any extension thereof, or on acreage pooled therewith, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in

paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.

. . . . .

Typed at the bottom was the following:
Lessee agrees to commence drilling in good faith on or before December 27, 1975; if drilling is delayed beyond December 27, 1975, then this lease shall become null and void. Lessor shall have the right to use, free of cost, gas, oil and water for his own use.

The trial court held both that the lease terminated and that it was forfeited. It is unclear whether the court found the lease to be forfeited on a theory of abandonment or for a breach of the implied covenants to develop. The parties interpreted the journal entry to encompass both theories; and therefore, we will address both herein.

First we will address the issue of termination. One of the reasons the trial court held that the lease terminated was because the lessees failed to obtain production in paying quantities before expiration of the primary term. The lessor, relying on the habendum clause, asserts that the court was correct. The lessees admit that there was no production in paying quantities at the end of the primary term. They contend, however, that because they commenced a well within the specified period, they were entitled to complete the well with due diligence even if the primary term expired prior to obtaining production in paying quantities. The lessees rely on the language of the development clause for this contention. For the reasons stated below, we find that the contention of the lessees to be correct.

■ The lease in question is one which is commonly referred to as an "unless" lease. It derives its name from its delay rental provision. In H. Williams, *Oil and Gas Law* § 605.2 (1977), it is explained as follows:
Commonly the "unless" clause of contemporary leases begins with a statement introduced by the word "if" concerning some supposition as to operations [as here] or production, followed by a provision for the termination of the lease unless certain rentals are paid. The supposition may refer to the commencement of a well (in which case the lease may be described as a "commencement" lease), or to the completion of a well (in which case the lease may be described as a "completion" lease).

This lease is a "commencement" lease, and our Supreme Court has drawn a distinction between "completion" and "commencement" leases on the basis of what is required to extend the lease into the secondary term within the meaning of the "thereafter" portion of the habendum clause. The distinction is set forth in *State v. Carter Oil Co.*, Okl., 336 P.2d 1086, 1095, as follows:
[W]here the lease involved is a "completion" lease, a well must be completed within the primary term thereof or when the lease involved is a "commence" lease, a well must be commenced before and completed with due diligence after the primary term fixed therein, producing oil or gas in paying quantities

. . . . .

So under "commencement" leases it is not necessary that production in paying quantities be obtained prior to the expiration of the primary term. It is only necessary for the lessee to have commenced a well by the expiration of the primary term.

In *Simons v. McDaniel*, 154 Okl. 168, 7 P.2d 419, the Oklahoma Supreme Court explained a "commencement" lease which provided for the payment of delay rentals. The Court stated, 7 P.2d at 420–21,
The drilling clause of lessee plaintiffs' lease conferred upon them the right to commence a well (by complying with the conditions of the instrument, i. e., exercising the option of paying rentals and thus continuing the lease in force) on the very last day of the term specified in the duration clause. Since lessee had such an agreed right, can we with reason say the parties to the lease contract contemplated that right a barren or worthless privilege? To do so is to convict the parties of

an absurdity. To the contrary, "in every private grant there passes by implication that which is reasonably necessary to the enjoyment of the thing granted." [Citations omitted.]

Therefore we hold that the grant to lessee plaintiff of the right to commence a well at any time within the term fixed by the lease contract, by necessary legal implication, carried with it the right to complete the well after the period fixed for commencement had expired, subject, however, to abandonment of that right by failure to proceed in good faith and with diligence.

The reasoning of the Court was that the habendum and development clauses created an ambiguity with regard to termination. Therefore, the interpretation placed on the lease by the Court brought the conflicting clauses into harmony thereby aiding development, because it allowed completion of a well rightfully commenced. 7 P.2d at 421.

The rationale of these cases is not negated by the fact that in the lease before us the blanks providing for the payment of delay rentals were not completed. In *Bain v. Portable Drilling Co.*, 200 Okl. 569, 198 P.2d 207, this very situation arose under a lease containing habendum and development clauses identical to the ones contained herein. The only factual difference between that case and this one is that in *Bain* the parties provided for commencement of a well within a period shorter than the primary term by supplemental agreement rather than in the body of the lease. The Court cited *Simons* and its progeny and found the failure of the parties to provide for the payment of delay rentals did not alter the rule that under a "commencement" lease all that is required of a lessee is commencement within the primary term and completion with due diligence thereafter.

■ In the case before us the lessees did commence a well within the period assigned. Therefore, the lease did not terminate at the end of the primary term solely for lack of production in paying quantities. But as noted in *Simons*, it was also necessary for the lessee to proceed to completion of the well in good faith and with diligence. Failure to comply with these requirements could cause forfeiture of the lease which we will discuss below. *See also State v. Carter Oil Co., supra.*

■ The other reason the trial court decreed termination was for failure to pay delay rentals. The lease evidenced no intent between the parties that delay rentals be paid because the blanks providing for such payment were not filled in, therefore no payment was required by the lease. *Bain v. Portable Drilling Corp., supra.*

Now we must determine if the lease was forfeited either by abandonment or by a breach of the implied covenants to develop. Since these theories are interwoven we will discuss them together. The parties do not dispute the lessees' diligence in development up to February 12, 1977, when the gas well was shut in after some production was had. The period in question is the nine months between February 12, 1977 and November 12, 1977, when rework began on the well. Lessees admit no work was done on the well within this time period. They contend, however, that the interruption in work on the well was merely a temporary cessation. And because it occurred during the primary term, it does not constitute either abandonment or a lack of due diligence within the context of the implied covenants to develop. These covenants are variously referred to in the law as covenants "to fully develop," "to further develop," or "to diligently develop." We will refer to them simply as implied covenants to develop.

■ Since this action was filed shortly after the end of the primary term, any breach of the implied covenants had to have occurred within that term. It is settled in Oklahoma that the covenants do operate both during the primary term and the secondary term. *Fox Petroleum Co. v. Booker*, 123 Okl. 276, 253 P. 33, 34.

In *Doss Oil Royalty Co. v. Texas Co.*, 192 Okl. 359, 137 P.2d 934, our Supreme Court distinguished the theory of abandonment,

which can cause forfeiture of the lease, from the forfeiture which results when the implied covenants to develop are breached. The court in its opinion corrected the confusion of prior case law allowing for cancellation for forfeiture under one or the other of these theories. The court found that to establish abandonment there must be physical relinquishment accompanied by an intention to abandon. To establish a breach of the implied covenants to develop, the diligence required by the lessee under the covenants would be measured by the "prudent operator rule," in other words, did the lessee engage in such activities upon the lease that an ordinary prudent operator would have done under the circumstances?

In this case the only evidence before the court was the stipulated facts and trial briefs. To prove entitlement to forfeiture either for abandonment or for breach of the implied covenants to develop, the lessor relied on two things. One, he had not been paid royalties, and two, the lessees failed to do any work on the lease for a period of nine months during the primary term. For the following reasons we find that the evidence is insufficient to justify cancellation on either theory.

 It is fundamental that the rights of the parties under the lease must be determined by its express provisions and any implied covenants which attach. *Fox Petroleum Co. v. Booker, supra,* 253 P. at 34. In H. Williams, *Oil and Gas Law,* § 604.3 (1977), Professor Williams stated, at 43, 47–48:

Absent an appropriate "cessation of production" clause in the lease, difficulty is presented by a cessation of production during the primary term. Neither the habendum nor the usual delay rental clause contains any provision concerning this eventuality. Thus it would appear that once production has been obtained during the primary term, the lessee may continue to hold the lease in effect during the balance of the primary term even though such production ceases permanently and the lessee neither commences new operations on the premises nor commences or resumes the payment of rentals.

. . . . .

Yet another view has been enunciated in a few cases, namely, that the lease may be lost by abandonment after the cessation of production in the primary term. Apart from the conceptual difficulties involved in the use of the abandonment theory, the proof required to establish "abandonment" is so great that the theory affords little assistance to the lessor. His interests would be better served by an express lease clause concerning cessation of production or the completion of a dry hole during the primary term. [Footnotes omitted.]

In this lease there was no cessation clause, no duty to pay delay rentals, and no other clause that would cause forfeiture under the lease except the one requiring commencement of a well within the first year of the primary term, with which lessees indisputedly complied. There is no proof tending to prove that the lessees intended to abandon the lease during the primary term, and it is unclear under Oklahoma law whether shutting in a well constitutes even physical relinquishment. See *Skelly Oil Co. v. Boles,* 193 Okl. 308, 142 P.2d 969, 970. Since both must be proved the lessor failed to meet his burden of proof as to abandonment. Further, the fact that the lessor took no steps to prevent the lessees from reworking the well during the primary term evidences their acquiescence and consent thereto which waives any unusual delay in the drilling of the well. *Griswold v. Public Service Co.,* 205 Okl. 412, 238 P.2d 322. This is not to say either that cessation for a period of nine months is or is not an unusual or unreasonable delay, because that determination depends upon the circumstances surrounding the cessation. *Kerr v. Hillenberg,* Okl., 373 P.2d 66, 69–70. We merely find that the evidence here does not support forfeiture on a theory of abandonment. The fact that no royalties have yet been paid is of no consequence because they still have time to attain production in paying quantities.

Neither do we find that the evidence substantiates forfeiture for failure to develop. The rules applicable to cancellation for breach of the implied covenants to develop were stated by the Oklahoma Supreme Court in *Union Oil Co. v. Jackson*, Okl., 489 P.2d 1073, 1077, as follows:

Settled rules controlling actions for cancellation of oil and gas leases for failure to develop have been stated many times. The lessor bears the burden of establishing breach of the covenants. Whether breach of the implied covenants has occurred must be tested by the ordinary prudent operator's test. A lessor seeking cancellation of an undeveloped portion of a lease, for lessee's failure to comply with implied covenants for development, must show " * * * probable costs of drilling, equipping and operating the well or wells, which lessor contends should have been drilled, that oil or gas would probably have been discovered thereon, and that the amount thereof would probably have been sufficient to have yielded a reasonable profit upon the total outlay." [Citations omitted.]

The Court went on to state, at 1078:

In no decision reviewed, including others not cited, is there an instance where cancellation for breach of implied covenant to diligently develop has been decreed solely by some reason of lapse of time. We recognize, however, in some instances unreasonable delay in further development may shift the burden of proof to lessee, to show the lessee acted as a reasonable prudent operator under the circumstances . . . .

The lessor presented no evidence that the lessees' nine month absence from the drill site was not the action of a prudent operator. Also, the evidence does not shift the burden to the lessees to justify their absence. The cases in which the burden was shifted involved situations where the lease had not been developed for a period of many years. See *Colpitt v. Tull*, 204 Okl. 289, 228 P.2d 1000 (over 20 years); *Wolfson v. Gill*, Okl., 309 P.2d 282 (over 30 years); *Doss Oil Royalty Co. v. Texas Co., supra*, (14

years). The only case involving a time period even similar to the one involved here is *Townsend v. Creekmore–Rooney Co.*, Okl., 332 P.2d .35, which involved a failure to market oil and gas for approximately 15 months in the secondary term. There our Supreme Court stated that such unexplained cessation was a prima facie showing of breach of the implied covenants to develop which justified cancellation. That case is distinguishable from the present one. Here we are concerned with cessation within the primary term, agreed to between the parties for exploration and development. As stated above, the lease itself does not call for forfeiture, the lessees allowed rework of the well, and the lease is a commencement lease allowing extension into a secondary period if a well is commenced within the primary term. Not only was one commenced, it was completed. All these circumstances taken together lead us to the conclusion that this is a case in which the burden to prove breach of the implied covenants does not shift.

Additionally, a prerequisite to forfeiture for breach of the implied covenants to develop is that the lessor make timely demand upon the lessee to comply therewith. *Gibson & Jennings v. Amos Drilling Co.*, 196 Okl. 143, 162 P.2d 1002, 1006. Although the lessor alleged in his petition that he made demand for forfeiture if no further development took place, he did not prove nor offer evidence of the allegation.

In *Stewart v. Amerada Hess Corp.*, Okl., 604 P.2d 854, the Supreme Court found that mere cessation within the secondary term would not in itself justify cancellation of a lease. So it is difficult to perceive how mere cessation within the primary term would act to justify cancellation of a lease.

Clearly the court had the power to cancel the lease, but such cancellation had to be justified by the evidence. It was not; therefore, we find the judgment was erroneous as a matter of law. *Union Oil Co. v. Jackson, supra*, at 1078. It well may be that this lease will terminate for lack of production in paying quantities at some la-

ter date, but at this point, for the reasons herein stated, the lessees are entitled to place their storage tanks upon the lease and bring the oil to the surface. Nothing stated in this opinion should be taken to mean that at this time the lessees are without a duty to proceed with due diligence in bringing this well to paying quantities. The suit itself serves as notice that the lessor demands such action.

The judgment of the trial court is reversed, and remanded with instructions to set aside its order of cancellation of the oil and gas lease, together with its injunction denying Appellants access to the property involved, costs to Appellee.

REVERSED AND REMANDED WITH INSTRUCTIONS.

REYNOLDS, P. J., and ROMANG, J., concur.